[No. 5538–1. Division One. July 13, 1978.]

K & C ASSOCIATES, *Respondent*, v. AIRBORNE
FREIGHT CORPORATION, *Appellant.*

*Lycette, Diamond & Sylvester* and *John W. Hempelmann*, for appellant.

*Reed, McClure, Moceri & Thonn, P.S., William R. Hickman, Richard C. Reed*, and *Anne Bradley*, for respondent.

FARRIS, C.J.—Airborne Freight Corporation appeals from a judgment awarding K & C Associates (its former landlord) the difference between Airborne's unpaid rent after it vacated the leased premises and the rental received by K & C from replacement tenants. We reverse.

In January of 1974, Airborne orally advised K & C that it would vacate its leasehold space the following summer and would cooperate in efforts to obtain replacement tenants. The seven separate lease agreements by which Airborne leased space had a termination date of February 28, 1975. In February 1974, Airborne entered into a lease which obligated its new landlord to assume and pay all Airborne's

remaining rental to K & C. Airborne advised K & C of its new landlord's assumption in a March letter confirming its intent to prematurely vacate.

K & C reached tentative agreement with two potential replacement tenants in July. It sent a "Release and Relinquishment of Space" agreement to Airborne under a cover letter conditioning acceptance of the new tenants on execution of this agreement. The agreement provided *inter alia* that Airborne would pay any deficiencies arising from the reletting of the former's space. Airborne and its new landlord rejected the offer and Airborne refused to sign the agreement.

In August, K & C and the two replacement tenants entered into 5-year leases for Airborne's space with smaller monthly payments than had been paid by Airborne. On October 14, Airborne vacated the premises and thereafter returned its keys.

Airborne's lease with K & C provided that in the event of breach, K & C could reenter the premises by giving 3 days' written notice and that, in the event of such reentry, Airborne would be liable for any rental deficiency. Without notice, K & C reentered the premises immediately following vacation. This action was brought thereafter to recover $20,728.38, the difference between the amount of rental K & C would have received under its lease with Airborne and the amount it received from its new tenants during the unexpired portion of Airborne's lease.

K & C argued that Airborne had abandoned the lease and that, accordingly, it, as landlord, had a right to reenter the premises, relet them and recover the deficiency rental from Airborne. It also argued that because of the abandonment, it was not required to give the 3-day notice dictated by the lease.

Airborne contended that it had not relinquished the legal right to possess the leased premises, that it was current in its rental payments to the date of reentry, and that K & C's reentry without the 3-day notice and its subsequent

reletting of the premises to replacement tenants relieved Airborne of all further obligation to pay rent.

The trial court held that Airborne's vacation of the leased premises with the intention not to return constituted abandonment. It accepted K & C's argument that the failure to give the 3 days' written notice did not prejudice K & C's right to recover the rental deficiency and entered judgment accordingly.

 Abandonment is a legal conclusion which must be supported by findings of (1) an act or omission and (2) an intent to abandon. *Aldrich v. Olson,* 12 Wn. App. 665, 668–69, 531 P.2d 825 (1975); *Moore v. Northwest Fabricators, Inc.,* 51 Wn.2d 26, 314 P.2d 941 (1957). Such findings must be supported by "clear, unequivocal and decisive evidence." *Aldrich v. Olson, supra* at 669.

An intent to discontinue the occupation of the leased premises does not per se constitute abandonment, *Aldrich v. Olson, supra.* Abandonment "involves an absolute relinquishment of premises by a tenant, . . ." *Tuschoff v. Westover,* 65 Wn.2d 69, 73, 395 P.2d 630 (1964). While the trial court found that Airborne left the leased premises with no intention to return, it also found that Airborne was current in its rental and had advised K & C that its new landlord would pay rent for the remainder of the lease term. The terms "abandon," "repudiate," "relinquish" or "quit" were not used in describing Airborne's intention to vacate and, in fact, Airborne refused to sign the release and relinquishment of space agreement which K & C proposed. The trial court's findings, coupled with the absence of a finding that Airborne intended to absolutely relinquish its legal rights in the leased premises, do not support the trial court's conclusion that Airborne abandoned the premises.

K & C argues that a failure to find abandonment here would place a landlord in a difficult position regarding its vacating tenant. It contends that a landlord who fails to reenter and attempt to relet the premises may be charged by the tenant with failing to mitigate damages while a landlord who does reenter runs the risk of relieving the

tenant of all further liability. That argument does not alter the requirement that a landlord must either determine that its tenant has abandoned or give the required notice before it reenters and relets the premises if it expects to recover a deficiency judgment. A tenant *may* continue its obligations under a lease even though it vacates the premises with no intention to return before the end of the lease term. Accordingly, K & C's reentry without giving the required 3–day notice relieved Airborne of all further liability under the lease.

Reversed.

CALLOW and GREEN, JJ., concur.

Reconsideration denied October 17, 1978.

Review denied by Supreme Court March 2, 1979.