[No. 6714-5-II.   Division Two.   January 30, 1985.]

RICHARD A. OLIN, ET AL, *Respondents,* v. FREDERICK A. GOEHLER, ET AL, *Appellants.*

*Richard L. Hildebrand,* for appellants.

*Daniel J. Tighe,* for respondents.

REED, J.—Frederick and Mary Goehler appeal an award to their landlords of 4 months' back rent, unpaid utility

expenses, storage costs and attorney's fees. Finding that the Goehlers were unlawfully evicted and that their counterclaims for conversion and unlawful eviction should not have been dismissed, we reverse and remand for a trial on those issues.

Frederick and Mary Goehler operated the Feed Store Restaurant in McCleary under a 10–year lease from Richard Olin.[1] The lease could be assigned with Olin's written consent, but the Goehlers would remain liable for rents and other charges after any assignment. Olin reserved the right to cancel the lease in the event of default and reenter the premises after giving "the notice required by law."[2]

As part and parcel of the sale of their restaurant business, Goehlers assigned their leasehold interest to Ronald and Virginia Carter. By conditional sales contract and the required Uniform Commercial Code documentation and filings, the Goehlers retained a security interest in the restaurant personalty to protect them should the Carters default under either the lease or contract. The contract included "the sellers' leasehold interest in property where said business is located," and provided that a breach of the lease would also be a breach of the contract, entitling Goehlers to forfeiture of the collateral. Olin's consent to the assignment of the lease was contained in a separate document, which specifically referred to the Carter contract and Goehlers' "collateral rights" reserved therein.

On September 27, 1981, the Carters, who were facing bankruptcy,[3] abandoned the restaurant. The next day the Goehlers contacted Olin and requested access to the restaurant and their collateral in order to continue the busi-

---

[1] John Carnell later became a partner with Olin in the leased premises. For convenience we refer only to Olin.

[2] Because of our disposition of this appeal, we need not address the additional provision that required all notices to be sent by registered mail.

[3] Carters filed for bankruptcy on December 17, 1981. Neither they nor their trustee in bankruptcy ever made any claim against Olin for possession of either the building or personal property.

ness or negotiate another sale. Olin, however, told them that the restaurant could not reopen until September's rent and utilities were paid, and that he would retain the personalty until the true owner was determined. The building's locks were changed and on October 1, 1981, Olin sent the Goehlers a letter demanding payment of both the September and October rent. On November 6 a second notice threatening termination of the lease was mailed, and on November 23 a notice of termination was sent. Later, Olin removed most of the collateral and placed it in commercial storage in his own name. In January of 1982, Olin relet the building and permitted the new lessee to use the balance of Goehlers' property in the operation of the business.

The Goehlers first argue that this "lockout" constituted a wrongful eviction because they had a right to reenter the leased premises upon the Carters' abandonment. We agree. An absolute assignment of a leasehold acts to divest the assignor of his estate and gives him no right of reentry on his assignee's abandonment. *Washington Trust Bank v. Circle K Corp.*, 15 Wn. App. 89, 94, 546 P.2d 1249 (1976); *Flynn v. Mikelian*, 208 Cal. App. 2d 305, 25 Cal. Rptr. 138, 141–42 (1962); 1 H. Tiffany, *Real Property* § 121, at 191 (3d ed. 1939). On the other hand, if the assignment is conditional, the assignor is not divested of his entire interest in the leasehold and his reservation of a right of reentry on breach of condition is valid and enforceable. *State v. Meador*, 60 Wn.2d 543, 545, 374 P.2d 546 (1962); *Ideal Inv. Co. v. Neely*, 147 Wash. 667, 671, 267 P. 46 (1928). Here, no express right of reentry was reserved. Such a right has been *implied*, however, where the lessee's leasehold is assigned in conjunction with the sale of his business, the sale documents reserve a security interest in personalty located on the leased premises, and a contemporaneous assignment refers to the contract. *Ferree v. Doric Co.*, 62 Wn.2d 561, 565–66, 383 P.2d 900 (1963); *Smith v. Larson*, 36 Wn.2d 236, 243–44, 217 P.2d 326 (1950); *Merrick v. Neely*, 143

Wash. 588, 594, 255 P. 936 (1927).[4] *See also Coulos v. Desimone,* 34 Wn.2d 87, 208 P.2d 105 (1949); *Nipet Realty, Inc. v. Melvin's Restaurant & Bar, Inc.,* 67 Misc. 2d 790, 327 N.Y.S.2d 2 (1971).

The rationale for implying a right of reentry in such a situation is that:

> It seems unreasonable . . . to say that a seller of a leasehold and furnishings of a [business] . . . would jeopardize his investment by permitting the vendee of a conditional sale contract to take absolute title to the leasehold interest and thus place it beyond the seller's power, in the event of default, to recapture his entire investment. In other words, the furniture and furnishings would be merely of nominal value without the right to occupy the . . . building and conduct business therein. We have no doubt that it was the intention of the parties when entering into this contract that the leasehold interest should never be separated from the furniture and furnishings. In the event of a default everything covered by the contract was to be returned to the seller.

*Smith v. Larson,* 36 Wn.2d at 243–44. Here, not only did Olin's consent to the assignment refer to the conditional sale contract, which reserved a security interest in the property sold (including the leasehold), but it expressly referred to the Goehlers' "collateral rights." In fact, Olin recognized the Goehlers as his tenants after Carters' abandonment, insisting only that delinquent rents and utility charges be paid as a condition to Goehlers retaking possession.

A lessor's unlawful lockout of one with a right to possession is a breach of the implied covenant of quiet enjoyment. *Aldrich v. Olson,* 12 Wn. App. 665, 667, 531

---

[4]Olin argues that this case is distinguishable because it involves a dispute between the lessor and original lessee where the latter's assignee has defaulted on the underlying lease, while in *Smith v. Larson* it was the lessee–assignor pursuing his assignee for a default under the *sales contract.* However, it is clear that an express right of reentry in an assignment is enforceable against an assignor's lessor. *State v. Meador, supra.* Also, that a prohibition against assignment without the lessor's consent does not preclude reassignment to the original lessee. *Coulos v. Desimone, supra.* Olin offers no reason why a suit by the lessor under the lease changes the standard for determining when such a right of reentry can be implied.

P.2d 825 (1975). *See Esmieu v. Hsieh,* 20 Wn. App. 455, 460, 580 P.2d 1105 (1978), *aff'd,* 92 Wn.2d 530, 598 P.2d 1369 (1979). Here, there was no abandonment by the Goehlers to make the lockout "lawful." An "abandonment" requires "clear, unequivocal and decisive evidence" of an intent to abandon. *Smith v. Favilla,* 23 Wn. App. 59, 61, 593 P.2d 564, *review denied,* 92 Wn.2d 1022 (1979); *K & C Assocs. v. Airborne Freight Corp.,* 20 Wn. App. 653, 655, 581 P.2d 1082 (1978), *review denied,* 91 Wn.2d 1020 (1979). The Goehlers, however, continually and unambiguously expressed their desire to resume possession in order to reopen or perhaps resell the restaurant. Olin's action was in fact unlawful because he excluded the Goehlers, without following the notice requirements.[5] Once having unlawfully ousted the Goehlers, Olin himself was in default and could not retrench and take advantage of his own reentry rights; he is precluded from recovering the rents thereafter accruing. *Republic Inv. Co. v. Naches Hotel Co.,* 190 Wash. 176, 180–81, 67 P.2d 858 (1937); *K & C Assocs. v. Airborne Freight Corp.,* 20 Wn. App. at 656; *Esmieu v. Hsieh,* 20 Wn. App. at 461; *see also Community Invs., Ltd. v. Safeway Stores, Inc.,* 36 Wn. App. 34, 671 P.2d 289 (1983). In addition, Olin is liable for any damage caused by his self–help eviction. *Nelson v. Swanson,* 177 Wash. 187, 191, 31 P.2d 521 (1934); *Spencer v. Commercial Co.,* 30 Wash. 520, 525–27, 71 P. 53 (1902); *Aldrich v. Olson,* 12 Wn. App. at 672.

Olin is also liable for the conversion of the personalty in the leased building. A conversion is a willful interference with a chattel without lawful justification, whereby a person entitled thereto is deprived of the possession of it. *Judkins v. Sadler–Mac Neil,* 61 Wn.2d 1, 3, 376 P.2d 837 (1962); *Barnett v. Everett Trust & Sav. Bank,*

---

[5]RCW 59.04.040 provides:

"When a tenant fails to pay rent when the same is due, and the landlord notifies him to pay said rent or quit the premises within ten days, unless the rent is paid within said ten days, the tenancy shall be forfeited at the end of said ten days."

13 Wn. App. 332, 334, 534 P.2d 836 (1975). Here, the Goehlers' security interest in the personalty gave them the right to possession upon the Carters' default. RCW 62A.9–503; *Jackson v. Peoples Fed. Credit Union,* 25 Wn. App. 81, 88, 604 P.2d 1025 (1979).[6] The trial court found that Olin did not exercise dominion and control over the collateral because he had "merely placed the same in storage in order that the court might make a determination as to ownership."[7] Assuming there had been a valid dispute or conflicting claims to the personal property, possession could have been denied the Goehlers only for so long as reasonably necessary to determine the identity of the rightful claimant. W. Prosser & P. Keeton, *Torts* § 15, at 100 (5th ed. 1984). Here, however, there was no attempt to ascertain the rightful claimant's identity during the 4 months preceding the suit; Olin's alleged good faith is no defense to a claim of conversion. *Fischnaller v. Sussman,* 167 Wash. 367, 373, 9 P.2d 378 (1932); *Judkins v. Sadler–Mac Neil,* 61 Wn.2d at 3–4. Olin's exclusion of the Goehlers from their collateral for an unreasonable period of time was a "willful interference" without "lawful justification," and therefore his actions constituted a conversion. Olin is liable for damages and is barred from recovering the moneys advanced for storage of the defendants' property. *See Fischnaller v. Sussman,* 167 Wash. at 372–73.

We reverse the judgment and remand for a determination of the damages due the Goehlers as a result of the wrongful eviction and conversion, less the rent and utilities that were due before they were unlawfully excluded. *See Woodward v. Blanchett,* 36 Wn.2d 27, 33–34, 216 P.2d 228

---

[6]Olin has made no claim to a superior right to the collateral by virtue of a statutory landlord's lien. RCW 60.72.010. Any such claim would fail because of Olin's disposition of the property and failure to enforce the lien within 2 months. *Culp v. McMehan,* 123 Wash. 499, 501–02, 212 P. 1069 (1923).

[7]Although couched in the form of a finding of fact, this determination was a conclusion of law and will be reviewed as such. *Ridgeview Properties v. Starbuck,* 96 Wn.2d 716, 719, 638 P.2d 1231 (1982).

# 695

(1950); *Nelson v. Swanson,* 177 Wash. at 197–98.

WORSWICK, C.J., and PETRICH, J., concur.

Review denied by Supreme Court May 10, 1985.