20 P.3d 447 (2001)
Ayalew DEMELASH, individually, Appellant,
v.
ROSS STORES, INC., a foreign corporation, d/b/a Ross Dress for Less; and David Feldman and "Jane Doe" Feldman, husband and wife and their marital community; and Sandra Bates and "John Doe" Bates, wife and husband and their marital community, Respondents.
No. 45638-5-I.
Court of Appeals of Washington, Division 1.
March 26, 2001.
*451 Eileen C. Sussex, Everett, for Appellant.
D. Michael Reilly, Michael King, Steven Jensen, Lane Powell Spears Lubersky, Seattle, for Respondent. *448 *449
*450 BAKER, J.
Ayalew Demelash sued Ross Dress for Less after its security agents detained him on suspicion of shoplifting. He prevailed on none of his claims and he now appeals, assigning error to pretrial discovery orders, summary judgment orders, evidence rulings, order for directed verdict, and denial of motion for new trial. Because the trial court erred in refusing to allow discovery of evidence about Ross Stores' conduct in other shoplifting incidents, we reverse the discovery orders and summary judgment on Demelash's Consumer Protection Act and RCW 49.60 claims. In addition, the question of whether Ross Stores reasonably retained Demelash's coat for 16 days requires reversal of summary judgment on his conversion claim. Finally, we hold that the trial court may properly impose sanctions under CR 37 and CR 26(g) for Ross Stores' unjustified resistance to discovery.

I
Ayalew Demelash is an Ethiopian immigrant with limited English skills. On January 2, 1998 he purchased a tan-colored coat from Ross Dress for Less. Two days later, he returned to the store wearing the somewhat wrinkled coat, to consider the purchase of another coat. At some point during his shopping, Ross Stores security agents determined that he was acting suspiciously and focused security cameras on him. The video tape Ross Stores later produced during discovery has a three-minute gap in the middle of the tape where no filming occurred, as well as a segment where the agents filmed another customer.
When the agents resumed filming Demelash, he was modeling a black coat in the women's department. When he finished with the coat, he took a wrinkled, tan coat from the rack near him and put it on. He replaced it with the black coat and hung it on the rack. When Demelash left the store, a security officer pursued and detained him. He escorted Demelash to a small office in the basement of the store, where two security officers questioned him about the coat he was wearing and photographed him. They demanded his identification and also asked him to sign an acknowledgement of shoplifting, despite his evident difficulty understanding English. Demelash declined.
Within minutes, Seattle Police officers arrived, who patted down Demelash and examined his identification. After about 40 minutes, the police returned all of Demelash's belongings to him except for his coat and allowed him to go home to retrieve a sales receipt for the coat. Demelash returned with the sales receipt, which the Ross agents verified. Although Demelash ultimately left the store with the understanding that he would not be charged with shoplifting, Ross Stores refused to relinquish the coat.
After two weeks, Demelash retained counsel because his coat had not been returned to him. Within two days, Demelash's coat arrived at his home, with no explanation by Ross Stores for the delay. Two days later, Demelash received a letter from Ross Stores' corporate counsel in California accusing him of wrongfully taking the coat and demanding $200.
Demelash instead sued Ross Stores on a multitude of claims including conversion, discrimination, Consumer Protection Act (CPA) violations, assault, battery, false arrest/imprisonment, breach of contract, and negligent training/supervision. During discovery, Demelash propounded interrogatories and requests for production (requests), paraphrased as follows:

Interrogatories # 6-7: All information related to any customer complaint of unlawful discrimination, CPA violations, harassment, extortion, breach of contract, false imprisonment, assault and battery from all stores for the period 1988 through the present date.

Request for Production # 3: All documents associated with answer to Interrogatories # 6-7 above.

Request for Production # 4: All materials related to Ross Stores' investigations in *452 response to customer allegations identified in response to Interrogatory # 7.

Request for Production # 10: All documents related to the security activities at the downtown Seattle store including surveillance, training, incident investigation, suspect detention, maintenance of incident reports, property assessment, demand and collection of civil fees and pursuit of criminal prosecution.

Request for Production # 11: Copies of all demand letters sent by Ross Stores counsel to shoplifting suspects.
Four months later, after serving general "preliminary objections," Ross Stores produced its answers, omitting answers to a number of interrogatories and requests including those listed above. It did not move for a protective order.
When the parties could not resolve their discovery disputes, Demelash moved to compel discovery. In its response, Ross Stores moved for a protective order. The trial court ordered Ross Stores to produce answers to interrogatories # 6 and # 7, and requests # 3 and # 4, limited to a four-year period, and permitted production in the form of summarized computer records. It also ordered production of documents requested in requests # 10 and # 11. Production was required within 14 days. The trial court granted fees of $500 to Demelash. Ross Stores moved to reconsider, which the court granted in part by limiting the demand letter request (request # 11) to only those recipients living in the state of Washington during the last four years.
Ross Stores did not comply with the court's orders. Although it did produce an 1,149 page computer generated report in response to interrogatories # 6 and # 7, and requests # 3 and # 4, the report did nothing more than provide the dates, names of customers, and a one or two word subject heading regarding the nature of the complaint, most of which related to personal injury and not to the requests of Demelash. In response to request # 10, Ross Stores only produced its training manuals. In response to request # 11, it first stated that the demand letters were forthcoming, then that a disk of the letters from its counsel would be produced "soon," and finally, that Ross Stores possessed no such letters and that Demelash should seek discovery directly from the attorney from whom Ross Stores had said it had requested the demand letters.
After two months, during which Ross Stores produced many of the other answers and documents ordered, but failed to provide the documents relating to other customer incidents, Demelash again filed a motion to compel, and again requested sanctions. Ross Stores opposed the motion, asserting that it had produced everything it was ordered to produce. It reargued privilege and work product in support of its refusal to produce documents responsive to request # 10, mischaracterized the discovery orders, and denied that it had any documentation responsive to request # 11. The trial court denied Demelash's motion.
In the meantime, Demelash attempted to secure similar information via new interrogatories. In interrogatory # 22 of the second requests, he asked Ross Stores to identify every incident report filed with any police department within the state of Washington since 1995. In interrogatory # 26, he asked Ross Stores to indicate whether it maintained any reports identifying the race or national background of suspects apprehended by Ross loss prevention agents. Ross Stores refused to produce the incident reports, referring Demelash to the numerous police departments within the state of Washington for the information. Again, Demelash filed a motion to compel discovery.
Ross Stores countered by moving for a protective order to forbid Demelash from propounding any further discovery without court permission. It complained bitterly that the discovery requests were oppressive and unjustifiable, totaling 150 interrogatories and over 20 requests for production. It claimed it had answered all requests in good faith. Demelash countered by arguing that Ross Stores had failed to produce the information critical to his case. He also pointed out that even though Ross Stores characterized the suit as a "simple false arrest" case, it had also engaged in heavy discovery, including 78 interrogatories to Demelash, production of his immigration files, all of his medical records, *453 and extensive questions about his religious practices. He was also deposed for two days. Demelash reargued the need for Ross Stores' security files pursuant to the original request # 10.
The court ordered Ross Stores to produce answers to interrogatory # 22 from the second set of discovery requests. It also prohibited both parties from further discovery absent an order of the court. Demelash moved the court to reconsider. In response, Ross Stores submitted two declarations. The first stated that Ross Stores had requested information of the Seattle Police Department and that it would forward the materials it received to Demelash upon receipt. It failed to address the multitude of other police departments to which the other Ross Stores locations would have forwarded their incident reports. The second declaration, submitted more than 14 months after Demelash first requested the information and during which time Ross Stores vigorously resisted production, finally stated that all of the security files for all Ross Stores in Washington were stored in the basement of the downtown Seattle store. It then declared that "within the last year or two, the downtown Ross Store sustained a disastrous flood ... where the records were kept." It concluded that it could therefore not answer interrogatory # 26, which asked for information about records concerning the race or national background of persons apprehended by Ross Stores employees. The declaration did not indicate the date of the flood, whether any records had survived, if duplicate records were stored elsewhere, or where the records accumulated since the flood were located. The trial court denied Demelash's motion for reconsideration.
The record does not indicate whether Demelash ever received the promised incident reports. Pending this last discovery motion, Ross Stores moved for summary judgment on Demelash's conversion and CPA claim, which the court granted. Ross Stores then moved for summary judgment on the RCW 49.60 claim, which was also granted. The court also dismissed on summary judgment the rest of Demelash's claims, except for the false arrest/false imprisonment and the assault/battery claims. Shortly before trial, the case was transferred to another trial judge, who directed a verdict for Ross Stores on the false arrest claim. The court also denied Demelash's motion for new trial following defense verdicts on the false imprisonment, and assault and battery claims. Demelash appeals.

II
Demelash contends that the trial court erred in failing to compel Ross Stores to produce discovery regarding its security activities, investigations and demand letters. Ross Stores argues that the requested discovery is protected under the attorney work product doctrine. A trial court has wide discretion in ordering pretrial discovery, which will not be disturbed absent a manifest abuse of discretion or a showing that it based its order on untenable grounds.[1] In general, parties may obtain nonprivileged discovery regarding any matter relevant to the subject matter of the pending action.[2] But a party may not obtain discovery prepared in anticipation of litigation unless he demonstrates substantial need and an inability to obtain the substantial equivalent by other means without undue hardship.[3]
Assuming arguendo that any portion of the challenged discovery constitutes work product, we are satisfied that Demelash has demonstrated the requisite substantial need for the information he sought. To establish his CPA claim, Demelash must show that Ross Stores' allegedly unfair or deceptive conduct occurred as part of a generalized course of conduct in the past that is likely to continue into the future. Because the conduct of which Demelash complains concerns Ross Stores' treatment of suspected shoplifters and the manner in which it conducts its attending investigations, the only way Demelash can establish a pattern of conduct is with the information requested concerning Ross *454 Stores' security incidents. Without it, his claim fails. Moreover, Ross Stores has exclusive possession of the information Demelash seeks. He cannot find the substantial equivalent elsewhere.
Ross Stores argues alternatively that the order limiting production of customer incidents to summary computer records was not an abuse of discretion because a "file by file review" of all of its incidents nationwide would be unduly burdensome and oppressive. A trial court must manage the discovery process in a fashion that promotes full disclosure of relevant information while at the same time protecting against harmful side effects.[4] Consequently, a court may appropriately limit discovery to protect against requests that are unduly burdensome or expensive.[5] In limiting discovery, a trial court must consider the needs of the case, its size, the parties' resources, and the importance of the issues at stake in the litigation.[6]
The trial court did not abuse its discretion in limiting production to a computerized summary of the discovery requested, based on Ross Stores' representation that it could provide the substantial equivalent of the requests in that manner. But Ross Stores failed to abide by the court's order, producing instead a useless report of names, dates and a one or two word description of customer complaints, most of which related to personal injury claims. Demelash is entitled to information regarding Ross Stores' conduct in other shoplifting incidents. On remand, the trial court should enter appropriate orders compelling Ross Stores to either produce this information or to verify that it does not exist.
Demelash further argues that he should have been able to depose Ross Stores four speaking agents in Seattle, rather than in California where the deponents reside. The trial court did not abuse its discretion in ordering that the depositions be held in California.

III
Demelash next challenges the summary judgment dismissal of six of his eleven claims against Ross Stores. We address his breach of contract claim first. An appellate court reviews an order on summary judgment de novo, performing the same inquiry as the trial court.[7] A motion for summary judgment may be granted only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.[8] All reasonable inferences from the facts must be considered in the light most favorable to the nonmoving party.[9] The trial court has no discretion; if there is any justifiable evidence supporting a verdict in favor of the nonmoving party, the question is for the jury.[10]
Demelash argues that Ross Stores breached its implied contractual duty of good faith by interfering with his use and possession of his coat two days after he purchased it.[11] RCW 62A.1-203 provides that every contract for goods imposes an obligation of good faith in its performance or enforcement. But the parties agree that Ross Stores and Demelash fully performed each element of the contract for the sale of goods. Ross Stores held the coat for sale at a certain price, Demelash paid the price in cash and took possession of the coat. At that point, the contract was complete. Both parties' obligations under it *455 were fully discharged and executed in good faith. There was no breach.
Demelash next asserts that Ross Stores' refusal to return his coat for 16 days constitutes conversion of his property.[12] Ross Stores argues that there was no conversion because it ultimately returned the coat. A defendant is liable for conversion if he willfully and without legal justification deprives another of ownership of his property.[13] A valid dispute or conflicting claims to property warrants retention only for so long as reasonably necessary to determine who rightfully owns the property.[14] In Olin v. Goehler, a landlord retained possession of his delinquent tenant's equipment despite the equipment seller's secured interest in the property. The court held Olin liable for conversion because he had made no attempt to ascertain the rightful claimant's identity during the four months preceding the suit and Olin's alleged good faith was no defense.[15]
Here, Ross Stores verified Demelash's receipt for his coat on the day he was detained. Nevertheless, it refused to return Demelash's coat to him until after Demelash hired counsel, 16 days later. Ross Stores argues that the coat was needed to investigate the possible shoplifting incident. This evidence, considered in a light most favorable to Demelash as the nonmoving party, creates a genuine issue of material fact as to whether the length of time Ross Stores held his coat was reasonable. Summary judgment on this claim is reversed.
Demelash further asserts that the trial court erred in dismissing his CPA claim.[16] He alleges that Ross Stores violated the Act by:
a) refusing to honor a valid receipt and return his coat;
b) attempting to secure an acknowledgment of shoplifting despite his apparent language barrier;
c) knowingly filing a misleading criminal complaint; and
d) demanding $200 on threat of litigation for a coat Ross Stores had returned to him.
Washington's Consumer Protection Act prohibits those in trade or commerce from engaging in unfair or deceptive acts or practices in the course of business with consumers.[17] Persons injured in their business or property in violation of the Act may bring a civil action to recover their actual damages sustained.[18] To prevail on a CPA claim, a plaintiff must prove each of the following five elements:
1) that the defendant engaged in an unfair or deceptive act or practice;
2) occurring in trade or commerce;
3) that affects the public interest; and
4) causes injury;
5) to plaintiff in his or her business or property.[19]
At summary judgment, Demelash successfully established all the elements of his prima facie case except whether or not Ross Stores' alleged conduct affects the public interest.[20] *456 Where a transaction at issue is essentially a consumer transaction, the following factors are relevant to determine whether the act or practice affects the public interest:
1) were the alleged acts committed in the course of defendant's business?
2) are the acts part of a pattern or generalized course of conduct?
3) were repeated acts committed prior to the act involving plaintiff?
4) is there a real and substantial potential for repetition of defendant's conduct after the act involving plaintiff?
5) if the act complained of involved a single transaction, were many consumers affected or likely to be affected by it?[21]
Demelash produced no evidence that Ross Stores has treated and continues to treat its other shoplifting suspects in a similar manner. But that failure was inevitable because the trial court failed to compel Ross Stores to produce discovery that might evidence the requisite pattern of unfair or deceptive conduct. In the absence of an opportunity to discover that evidence, summary judgment was premature and we therefore reverse.
On the same basis, we reverse the trial court's dismissal of Demelash's discrimination claim under RCW 49.60. RCW 49.60.030 prohibits discrimination in public accommodation, inter alia, on the basis of race or national origin. Public accommodation includes any place where the sale of goods, merchandise, services, or personal property is transacted.[22] The purpose of the law is to deter and eradicate unlawful discrimination in Washington.[23] In discrimination cases under RCW 49.60, Washington courts have adopted the burden shifting scheme used by federal courts.[24] First, a plaintiff must advance a prima facie case of discrimination.[25] The burden then shifts to the defense to present a legitimate nondiscriminatory explanation for its action.[26] The plaintiff may then show that the advanced reason is merely pretext for unlawful discrimination.[27]
Washington courts have not established the necessary elements of a prima facie showing of race/national origin discrimination in public accommodation. In the context of handicap discrimination, however, a plaintiff must show:
1) the plaintiff has a disability;
2) defendant's establishment is a place of public accommodation;
3) defendant discriminated against plaintiff by providing treatment that was not comparable to the level of designated services provided to individuals without disabilities; and
4) the disability was a substantial factor causing the discrimination.[28]
We hold that similar elements must be shown in the context of claims for race/national origin discrimination in public accommodation as follows:
1) the plaintiff is a member of a protected class;
2) the defendant's establishment is a place of public accommodation;
3) the defendant discriminated against plaintiff by not treating him in a manner comparable to the treatment it provides to persons outside that class; and
4) the protected status was a substantial factor causing the discrimination.
*457 The parties do not dispute that Demelash is a member of a protected class and that Ross Stores is a place of public accommodation. However, elements 3 and 4 remain unresolved. Demelash presented evidence that he was detained for shoplifting, photographed, deprived of his coat for 16 days despite production of a valid receipt, and subjected to a demand letter for $200. But he failed to produce competent evidence that Ross Stores' conduct towards him differed from its treatment of non-Black, non-Ethiopian suspected shoplifters; and further, whether race/national origin constituted a substantial factor in motivating Ross Stores' behavior. Demelash's evidence that 17 percent of Ross Stores' customer complaints over the last five years alleged race discrimination does not meet the required burden.
However, the discovery Demelash sought might have evidenced disparate treatment sufficient to permit Demelash to establish his prima facie case. For this reason, summary judgment was premature and we reverse on this claim.
Demelash next contends that the trial court erred in dismissing his race discrimination claim under 42 U.S.C. § 1981. Section 1981 addresses discrimination in contractual relationships, most generally in the employment context, although occasional consumer transaction claims do arise.[29] The relevant portions of the statute provide:
(a) Statement of equal rights
All persons within the ... United States shall have the same right ... to make and enforce contracts ... as is enjoyed by white citizens ...
(b) "Make and enforce contracts" defined
For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.
(c) Protection against impairment
The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law.[30]
To establish a prima facie case of discrimination, a plaintiff must show that (1) he is a member of a racial minority; (2) the defendant had an intent to discriminate on the basis of race; and (3) the discrimination interfered with the making and enforcing of a contract.[31]
Without addressing the second prong, Demelash's claim fails the third. Ross Stores did not breach its original sales contract with him when it seized his coat two days after he had purchased it. Moreover, when he was apprehended, he had not attempted to purchase any other items in the store and was thus not attempting to form a new contract. In the absence of an attempt to make or enforce a contract, summary judgment in favor of Ross Stores was proper.[32]
Demelash next claims that Ross Stores is liable for negligently training/supervising its employees because of its alleged failure to investigate claims of discrimination and failure to train loss prevention experts regarding the legal rights of persons suspected of shoplifting. But Demelash failed to argue this claim in response to Ross Stores' motion for summary judgment. We generally will not review an issue, theory or argument not presented at the trial court level.[33] The purpose of this rule is to afford the trial court an opportunity to correct errors, thereby avoiding unnecessary appeals and retrials.[34] We decline to consider this issue.

*458 IV
Demelash argues that the court should have compelled attendance at trial of four California based Ross Stores executives. A party may compel the attendance of managing agents of corporate parties at trial unless the trial court orders otherwise for good cause.[35] Demelash sought these witnesses to verify accuracy of discovery and to testify regarding negligent training practices and Ross Stores' basis for retaining Demelash's coat after he produced a valid receipt. Most of this testimony was not relevant to the issues at trial of false arrest/imprisonment and assault/battery, and none of it warrants imposing on Ross Stores the expense of flying the witnesses from California to Seattle to appear at trial.
Demelash also argues that the trial court committed reversible error by excluding the following evidence at trial:
1) sales receipt for his coat;
2) records indicating that Ross Stores terminated the security officer who detained him;
3) Ross Stores' refusal to honor his receipt and its failure to return his coat;
4) the demand letter Ross Stores sent to him for $200 after it returned his coat to him;
5) Ross Stores' training materials; and
6) other security incidents forming a pattern of suspect conduct.
None of this evidence was relevant to prove the elements of false arrest/imprisonment, and assault and battery. There was no error.
Demelash next assigns error to the trial court's directed verdict on his claim of false arrest, asserting that he mistakenly believed that the Ross Stores agent was a police officer. We review a ruling on motion for directed verdict de novo.[36] A motion may be granted only if it can be said, as a matter of law, that no evidence or reasonable inferences exist to sustain a verdict for the party opposing the motion.[37] The evidence must be considered in the light most favorable to the nonmoving party.[38]
Demelash presented no evidence to support his claim. False arrest occurs when a law enforcement officer, or one claiming to have the powers of a police officer, unlawfully restrains or imprisons another by physical force, threat of force, or conduct reasonably implying the use of force against the detainee should he resist.[39] The claim does not turn on the misperceptions of the detainee, but on the intent of the person making the arrest. Because Demelash presented no evidence that the Ross Stores security agent attempted to convince him he was a police officer, the claim fails.
Demelash argues that substantial justice requires that he be granted a new trial on his false imprisonment, and assault and battery claims. Unless a trial court's ruling is predicated upon an issue of law, its decision to grant or deny a motion for new trial is reviewed for abuse of discretion.[40] A court may grant a motion for a new trial when important rights of the moving party are materially affected because substantial justice has not been done.[41] Here, Demelash cannot show that any of his rights at trial were materially affected because the bases for his argument, namely, exclusion of evidence at trial and the trial court's failure to compel production of discovery, are not relevant to the issues at trial.

V
Finally, Demelash contends that the trial court should have imposed sanctions against Ross Stores for abusing the discovery process. He argues that Ross Stores refused to *459 produce discovery the trial court ordered to be produced, misled the trial court regarding discovery in its possession, and disingenuously claimed that discovery essential to his claims was destroyed in a flood. Ross Stores counters that the trial court ultimately ruled that it need not produce some of the requested discovery, and that it produced all other discovery in its possession.
A trial court's decision not to impose discovery sanctions is reviewed for abuse of discretion.[42] A trial court necessarily abuses its discretion if its ruling is based on an erroneous view of the law or on a clearly erroneous assessment of the evidence.[43] In this case, the trial court based its ruling not to impose discovery sanctions on an erroneous conclusion that Ross Stores need not produce discovery essential to Demelash's case. Consequently, it necessarily abused its discretion in considering whether Ross Stores' conduct warranted sanctions.
Civil rule 37 authorizes a court to impose sanctions against a party and/or its attorney for failure to produce discovery or to comply with a discovery order. Here, Ross Stores failed to initially respond to many interrogatories and requests for production of documents, instead offering boilerplate objections. It did not move for protective order until its response to Demelash's motion to compel production. Even after the trial court entered an order compelling production, Ross Stores refused to produce answers to request # 11, and its computer summary was not responsive. Ross Stores supported its request to produce discovery via computer records by representing that the substantial equivalent of the information requested could be produced in that form, but its actual production violated the court's order and failed the letter and spirit of full disclosure required by CR 37.
The trial court's later order that Ross Stores need not produce additional computer records does not excuse Ross Stores' conduct. At the time of Ross Stores' violation, an order to compel was in effect. Moreover, Ross Stores' claim that it had fully complied with the express language of the court's written order ignored its prior oral representations on which the order was based.
Ross Stores also violated CR 26. CR 26(g) provides that when responding to a discovery request, an attorney must certify by signature on the answers to discovery that, after making "reasonable inquiry," the responses are: (1) consistent with the rules, (2) not interposed for any improper purpose, and (3) not unreasonable or unduly burdensome or expensive. "Reasonable inquiry" is judged by an objective standard.[44] CR 26(g) parallels CR 11. Its purpose is to deter discovery abuses, which include delaying tactics, procedural harassment and mounting legal costs.[45]
Here, Ross Stores' intransigence regarding discovery did not constitute justified resistance, but rather served to delay, harass and increase the costs of litigation. Moreover, its declaration that requested documents were destroyed in "a disastrous flood" occurring "within the last year or two" indicates failure to make reasonable inquiry before providing responses to request # 10 and interrogatory # 22. The declaration was filed 14 months after Demelash first requested the information, and failed to state the date the flood occurred, whether some records survived, or why the most recent records could not be produced.
On remand, the trial court should fashion an appropriate discovery order that requires Ross Stores to produce the information Demelash requested (i.e., a computer generated report should produce the substantial equivalent of the information Demelash requested or if that is not possible, then the files should be produced, limited if necessary and in the discretion of the trial court, to the scope *460 necessary and appropriate to Demelash's claims). It should also determine the particulars of the timing and effect of the flood vis-à-vis the requested documents. After reviewing such information, the trial court should consider an appropriate sanction for violation of discovery orders.
Reversed in Part/Affirmed in Part.
KENNEDY, J., and WEBSTER, J., concur.
NOTES
[1] Hertog v. City of Seattle, 88 Wash.App. 41, 47, 943 P.2d 1153 (1997).
[2] CR 26(b)(1).
[3] CR 26(b)(4).
[4] Kramer v. J.I. Case Mfg. Co., 62 Wash.App. 544, 556, 815 P.2d 798 (1991).
[5] CR 26(b)(1); Kramer, 62 Wash.App. at 556, 815 P.2d 798.
[6] CR 26(b)(1).
[7] Herron v. Tribune Publ'g Co., Inc., 108 Wash.2d 162, 169, 736 P.2d 249 (1987).
[8] CR 56(c); Wilson v. Steinbach, 98 Wash.2d 434, 437, 656 P.2d 1030 (1982).
[9] Scott v. Pacific West Mt. Resort, 119 Wash.2d 484, 502, 834 P.2d 6 (1992).
[10] Graves v. Dep't of Game, 76 Wash.App. 705, 713, 887 P.2d 424 (1994).
[11] Demelash claims that the trial court sua sponte dismissed his breach of contract claim with no opportunity to respond. In fact, Ross Stores moved for summary judgment on that claim in its motion for summary judgment re recently added claims and Demelash argued vigorously against dismissal in his response.
[12] Demelash again asserts that the trial court dismissed this claim sua sponte and with no opportunity to respond. Although it is true that Ross Stores did not move for dismissal of the conversion claim in its motion, Demelash argued against dismissal of this claim in his brief in opposition. The trial court therefore had available to it Demelash's arguments from which to render a decision.
[13] Olin v. Goehler, 39 Wash.App. 688, 693, 694 P.2d 1129 (1985).
[14] Olin, 39 Wash.App. at 694, 694 P.2d 1129.
[15] Olin, 39 Wash.App. at 694, 694 P.2d 1129.
[16] Ross Stores contends that Demelash did not raise this argument before the trial court. In fact, Demelash did so in his response to Ross Stores' motion for summary judgment, which the trial court considered.
[17] RCW 19.86.020.
[18] RCW 19.86.090.
[19] Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co., 105 Wash.2d 778, 780, 719 P.2d 531 (1986) (failure to prove any element is fatal to the claim); Goodyear Tire & Rubber Co. v. Whiteman Tire, Inc., 86 Wash.App. 732, 743, 935 P.2d 628 (1997).
[20] Whether an act gives rise to a CPA violation is reviewed as a question of law. Leingang v. Pierce County Med. Bureau, Inc., 131 Wash.2d 133, 150, 930 P.2d 288 (1997); see also Sing v. John L. Scott, Inc., 134 Wash.2d 24, 30, 948 P.2d 816 (1997). The acts of which Demelash complains, if proven, are plainly designed to intimidate. In the absence of reasonable justification, they are deceptive and unfair.
[21] Hangman Ridge, 105 Wash.2d at 790, 719 P.2d 531.
[22] RCW 49.60.040(10).
[23] Marquis v. City of Spokane, 130 Wash.2d 97, 109, 922 P.2d 43 (1996).
[24] Lewis v. Doll, 53 Wash.App. 203, 765 P.2d 1341 (1989).
[25] Lewis, 53 Wash.App. at 206, 765 P.2d 1341.
[26] Lewis, 53 Wash.App. at 206, 765 P.2d 1341.
[27] Lewis, 53 Wash.App. at 206, 765 P.2d 1341.
[28] Negron v. Snoqualmie Valley Hosp., 86 Wash. App. 579, 581, 936 P.2d 55 (1997). (Issue of fact existed as to whether hospital treated deaf person comparably to non-deaf person where the hospital failed to communicate with husband of critically ill woman because he was deaf).
[29] Morris v. Office Max, Inc., 89 F.3d 411, 413 (7th Cir. 1996).
[30] 42 U.S.C. § 1981(a)-(c).
[31] Morris, 89 F.3d at 413.
[32] Our holding renders Demelash's ancillary claim of malice moot inasmuch as it is relevant only for an award of punitive damages pursuant to a § 1981 claim.
[33] State v. Thompson, 55 Wash.App. 888, 892, 781 P.2d 501 (1989).
[34] Thompson, 55 Wash.App. at 892, 781 P.2d 501.
[35] CR 43(f)(1).
[36] Rowe v. Vaagen Bros. Lumber, Inc., 100 Wash. App. 268, 274, 996 P.2d 1103 (2000).
[37] Gurno v. Town of LaConner, 65 Wash.App. 218, 222-23, 828 P.2d 49 (1992).
[38] Gurno, 65 Wash.App. at 223, 828 P.2d 49.
[39] Bender v. City of Seattle, 99 Wash.2d 582, 591, 664 P.2d 492 (1983).
[40] Cox v. General Motors Corp., 64 Wash.App. 823, 826, 827 P.2d 1052 (1992).
[41] CR 59(a).
[42] Washington State Physicians Ins. Exch. & Ass'n v. Fisons Corp., 122 Wash.2d 299, 338, 858 P.2d 1054 (1993).
[43] Fisons 122 Wash.2d at 339, 858 P.2d 1054; Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 405, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990).
[44] Fisons, 122 Wash.2d at 343, 858 P.2d 1054.
[45] Fisons, 122 Wash.2d at 341, 343, 858 P.2d 1054.