IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| TANDEM, A WINE AND CHEESE BAR LLC, a Washington limited liability company, | No. 82158-0-I |
| Appellant, | DIVISION ONE |
| v. | UNPUBLISHED OPINION |
| NWCV ASSOCIATES, LLC, a Washington limited liability company, | |
| Respondent, | |
| and | |
| BRADLY and LISA HAVENS, husband and wife, and their marital community, | |
| Third Party Defendants. | |

SMITH, J. — Tandem, a Wine and Cheese Bar LLC (Tandem), appeals from the trial court's summary dismissal of its claims for breach of lease, breach of the covenant of quiet enjoyment, and wrongful eviction against its former landlord, NWCV Associates, LLC (NWCV). We affirm.

FACTS

NWCV owns a two-story commercial building in Woodinville. In February 2015, NWCV entered into a lease (Lease) with Bradly and Lisa Havens for a suite in its building (premises). Later, and with NWCV's consent, the Havens assigned the Lease to their company, Tandem, which operated a wine bar and restaurant at the premises.

In October 2018, Tandem filed for bankruptcy protection under chapter 11

Citations and pin cites are based on the Westlaw online version of the cited material.

of the United States Bankruptcy Code. During the bankruptcy proceeding, Tandem moved to assume the Lease, and NWCV moved to terminate it. On June 18, 2019, the matters came before the bankruptcy court, which, after an evidentiary hearing, denied Tandem's motion to assume the Lease, granted NWCV's motion to terminate the Lease, and dismissed Tandem's bankruptcy case. The bankruptcy court ordered as follows:

> 1. [NWCV]'s Motion is granted and the . . . Lease . . . is hereby terminated.
> 2. [Tandem] is ordered to surrender possession of the leased premises to [NWCV].
> 3. [Tandem] will not operate its restaurant or use the leased premises and common areas in any way after the entry of this Order without the consent of [NWCV].
> 4. [NWCV] will cooperate with [Tandem] to allow [Tandem] to remove its property from the premises.

The bankruptcy court entered its order on Friday, June 21, 2019.

Meanwhile, after the June 18 evidentiary hearing, one of Tandem's attorneys informed NWCV's attorney that Tandem had weddings scheduled for the upcoming weekend (the weekend of June 22-23, 2019). Tandem's attorney requested that NWCV allow Tandem's restaurant to remain open for the weekend so the weddings would not be disrupted. On Friday, June 21, NWCV's attorney wrote Tandem's other attorney:

> [NWCV] remains willing and ready to accommodate [Tandem]'s request made through [your co-counsel] at the courthouse on Tuesday. We understand that [Tandem] has one or more private events scheduled for this weekend, including a big wedding. [NWCV] has no wish to inflict harm upon third parties, such as the prospective bride and groom. The order signed by [the bankruptcy court] today allows [NWCV] to give [Tandem] permission to conduct business in the premises after the entry of the order. [NWCV] is willing to grant [Tandem] permission to open for business as usual today, tomorrow, and Sunday.

> However, this permission is conditioned upon [Tandem]'s agreement to close the business at the end of the evening on Sunday and not to reopen. We will expect [Tandem] to turn in their keys on Monday morning, and [NWCV] will change the locks at that time.
>
> As we discussed previously, [NWCV] will give [Tandem] ready access through the end of June to remove personal property from the premises.

NWCV's attorney asked Tandem to "confirm . . . acceptance of this offer on the terms set forth above." It is undisputed that Tandem did not expressly confirm its acceptance. It also is undisputed that Tandem conducted business at the premises Saturday and Sunday, June 22-23.

On Monday morning, June 24, NWCV changed the locks on the premises in the Havens' absence. That same day, Tandem's attorney emailed NWCV's attorney and stated, "We will make arrangements to have all of the personal property removed from the premises by the end of the month."

In September 2019, Tandem, through new counsel, filed this lawsuit against NWCV.[1] Tandem alleged four causes of action against NWCV: (1) breach of the covenant of quiet enjoyment, (2) wrongful eviction premised on a violation of chapter 59.12 RCW, i.e., the unlawful detainer statutes, (3) breach of the Lease, and (4) conversion. NWCV counterclaimed for waste, conversion, declaratory judgment regarding the ownership of certain installations within the premises, foreclosure of a landlord's lien, and breach of the Lease. It also

---

[1] The record reflects that in the intervening months, disputes arose among the parties and Tandem's secured creditor regarding the disposition of personal property remaining at the premises. These disputes are not material to the issues in this appeal, and thus, we do not discuss them further.

brought third party claims against the Havens for conversion and waste.

NWCV moved for summary judgment dismissal of all four of Tandem's causes of action against it. Tandem cross-moved for partial summary judgment, seeking an order holding NWCV liable for wrongful eviction as a matter of law and dismissing some of NWCV's counterclaims.

The trial court granted NWCV's motion in part and entered an order dismissing all of Tandem's claims against NWCV except the conversion claim (summary judgment order). It denied Tandem's cross-motion for partial summary judgment.

After the trial court declined to certify its orders for immediate appeal, Tandem sought discretionary review, which a commissioner of this court denied.[2] The parties then agreed to dismiss all outstanding claims with the intent "to bring an end to this case in the trial court, so that . . . Tandem is free to file an appeal of right from the summary judgment order." The trial court, pursuant to the parties' stipulation, entered an order dismissing "the claims, counterclaims, and third party claims which remain extant in this Court . . . without prejudice" (dismissal order). Tandem then filed a notice of appeal designating the summary judgment order and the dismissal order. Tandem did not designate the trial court's separate order denying its cross-motion for partial summary judgment (denial order).

---

[2] See RAP 2.2(d) (CR 54(b) certification required to appeal from a judgment that does not dispose of all claims as to all parties); CR 54(b) (court may direct entry of final judgment as to fewer than all of the claims or parties only upon an express determination that "there is no just reason for delay").

ANALYSIS

Summary Judgment

As an initial matter, Tandem argues that we should reverse not only the summary judgment order, but also the trial court's ruling denying Tandem's cross-motion for summary judgment on NWCV's landlord lien claim. NWCV contends that this ruling is not properly before us because it was part of the denial order, which Tandem did not designate in its notice of appeal. We agree with NWCV.

We generally will not review a decision not designated in the notice of appeal. RAP 2.4(a). RAP 2.4(b) provides an exception for an undesignated ruling if, as relevant here, "the . . . ruling prejudicially affects the decision designated in the notice." Tandem contends that this exception applies to the trial court's ruling denying summary judgment on NWCV's landlord lien claim because that ruling prejudicially affected the summary judgment order.

Tandem is incorrect. An order or ruling prejudicially affects a decision if the decision would not have occurred absent the order or ruling. See Adkins v. Aluminum Co. of Am., 110 Wn.2d 128, 134, 750 P.2d 1257 (1988) (trial court's decision to grant a mistrial was reviewable in appeal from judgment following second trial, where "[t]he second trial would not have occurred absent the trial court's decision granting the motion for a mistrial"). Here, the trial court could have granted summary judgment on Tandem's claims against NWCV without considering—much less denying summary judgment on—NWCV's landlord lien claim against Tandem. Contrary to Tandem's assertions, one ruling does not

5

prejudicially affect another ruling merely because both rulings were made in the context of cross-motions for summary judgment.

Tandem also contends that the trial court's ruling denying summary judgment on the landlord lien claim prejudicially affected the dismissal order, which Tandem did designate. Again, Tandem is incorrect. The parties stipulated to dismiss the remaining claims in this case. So, the trial court had no choice but to do so, regardless of its earlier ruling. See CR 41(a)(1)(A) ("[A]ny action shall be dismissed by the court . . . [w]hen all parties who have appeared so stipulate in writing."); CR 41(c) (making the rule applicable to counterclaims, cross claims, and third party claims). Although the parties may not have entered the stipulation absent the denial order, the "but for" precedent to the dismissal order was the parties' stipulation, not the denial order. Cf. Right-Price Recreation, LLC v. Connells Prairie Cmty. Council, 146 Wn.2d 370, 380, 46 P.3d 789 (2002) (earlier ruling is reviewable under RAP 2.4(b) if "the order appealed from would not have happened but for the first order"). Furthermore, because Tandem agreed to the dismissal order, it cannot—and does not—argue the trial court erred in entering that order. Cf. Fite v. Lee, 11 Wn. App. 21, 25-26, 521 P.2d 964 (1974) ("The order of dismissal . . . was in the nature of a judgment by consent, which, in the absence of fraud or mistake or want of jurisdiction, will not be reviewed on appeal."). We are unpersuaded that RAP 2.4(b) allows an appellant to bring an undesignated ruling up for review by designating an agreed order that the appellant does not actually challenge.

Finally, Tandem argues that we should exercise our discretion to review

6

the trial court's ruling on NWCV's landlord lien claim under RAP 18.8(a), which provides that we may "waive or alter the provisions of any of [the RAPs] . . . in order to serve the ends of justice." For the reasons already discussed, we decline to do so.

We turn, then, to the trial court's summary judgment order. Tandem argues that because NWCV's changing of the locks on Monday, June 24, 2019, was unlawful, the trial court erred by summarily dismissing Tandem's claims for breach of the covenant of quiet enjoyment, wrongful eviction, and breach of the Lease. We disagree.

We review summary judgment orders de novo, and "[w]e may affirm on any basis supported by the record." Bavand v. OneWest Bank, 196 Wn. App. 813, 825, 385 P.3d 233 (2016). "[S]ummary judgment is appropriate where there is 'no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law.' " Elcon Constr., Inc. v. E. Wash. Univ., 174 Wn.2d 157, 164, 273 P.3d 965 (2012) (second alteration in original) (quoting CR 56(c)).

Here, Tandem does not challenge the validity or efficacy of the bankruptcy court's order.[3] That order plainly terminated the Lease and directed Tandem to surrender possession of the premises. Importantly, it also directed Tandem not to "operate its restaurant *or use the leased premises and common areas in any way after the entry of this Order*" without NWCV's consent. (emphasis added.)

---

[3] For this reason, we agree with Tandem that we need not address NWCV's argument that the order was entitled to full faith and credit in the trial court.

7

On Friday, June 21, 2019, NWCV offered to allow Tandem to open for business through Sunday, expressly "conditioned upon [Tandem]'s agreement to close the business at the end of the evening on Sunday and not to reopen." NWCV further notified Tandem of its intent to change the locks on Monday morning, and on Monday morning, it did so in Tandem's absence. Under these circumstances, the trial court did not err in summarily dismissing Tandem's claim that NWCV's changing of the locks constituted a breach of the Lease—which was no longer in effect—or of the covenant of quiet enjoyment implied therein. Cf. Esmieu v. Hsieh, 20 Wn. App. 455, 460, 580 P.2d 1105 (1978), aff'd, 92 Wn.2d 530, 598 P.2d 1369 (1979) (covenant of quiet enjoyment is implied in every lease). And, given that NWCV's consent to use the premises lasted only through Sunday and NWCV plainly stated its intent to change the locks on Monday, the trial court also did not err by summarily rejecting Tandem's claim that NWCV's follow-through on its stated intent constituted a wrongful eviction. Cf. Olin v. Goehler, 39 Wn. App. 688, 692, 694 P.2d 1129 (1985) ("A lessor's unlawful lockout *of one with a right to possession* is a breach of the implied covenant of quiet enjoyment." (emphasis added)).

Tandem disagrees and points out that it did not expressly accept the terms in NWCV's June 21, 2019, offer to allow Tandem to continue operating through the weekend, including turnover of possession the following Monday. This observation does not help Tandem: If there was no agreement, then there also was no consent for Tandem to continue using the premises after June 21, 2019. In any case, we are unpersuaded that Tandem's silence in the face of

8

NWCV's communicated intent to change the locks on Monday rendered NWCV's doing so unlawful. Cf. Bakke v. Columbia Valley Lumber Co., 49 Wn.2d 165, 169, 298 P.2d 849 (1956) (where landowner's offer to allow use of road was clearly conditioned on payment of a specified price until such time as the parties reached a more permanent arrangement, "[t]he offer was accepted when the [recipient] remained silent and continued to use the road, knowing that the [landowner] expected compensation on the stated basis").

Tandem also asserts that it remained a tenant despite the bankruptcy court's order terminating the Lease, and thus, absent an ejectment action, "the *only* proper means of removing Tandem was by obtaining a writ of restitution pursuant to [the unlawful detainer statutes,] RCW 59.12 *et seq.*, even after the issue of possession or right to possession had been determined." Relying on Worthington v. Moreland Motor Truck Co., 140 Wash. 528, 250 P. 30 (1926), Tandem first argues that "[f]ollowing the Bankruptcy Order, Tandem's status was still that of a . . . month-to-month tenant."

In Worthington, the underlying lease expired by its terms on August 31. 140 Wash. at 530. The tenant paid, and the landlord accepted, monthly rent for September and October as the parties attempted to negotiate a new lease. Worthington, 140 Wash. at 529-30. On November 1, after negotiations failed, the tenant vacated the premises, and on November 3, the tenant notified the landlord it had vacated. Worthington, 140 Wash. at 530, 532. The landlord sued for unpaid rent. Worthington, 140 Wash. at 530. Our Supreme Court held that because there was a tenancy "for an indefinite time" following the expiration of

the lease, and monthly rent was being paid and accepted, the relation between the parties was a month-to-month tenancy. Worthington, 140 Wash. at 532.

Here, by contrast, there was no tenancy for an "indefinite time" after the bankruptcy court terminated the Lease. As discussed, the bankruptcy court's order extinguished Tandem's right to use the premises for any purpose absent NWCV's consent. That consent, to the extent given, lasted only through the weekend. Tandem's reliance on Worthington is misplaced, and we are unpersuaded that a month-to-month tenancy existed following entry of the bankruptcy court's order.

Tandem asserts, in the alternative, that it was a tenant at sufferance. In support, it cites Hinkhouse v. Wacker, 112 Wash. 253, 191 P. 881 (1920), aff'd on reh'g, 112 Wash. 253, 195 P. 218 (1921). Hinkhouse involved a purported six-year lease of community property farmland that was signed by the lessor husband but not his wife. 112 Wash. at 254. The lessee argued that even though the wife had not signed the lease, the lessee was entitled to possession for the second year of the lease because he had already sown wheat for that year. Hinkhouse, 112 Wash. at 256. Our Supreme Court disagreed and held that because the lease was of community property and the wife did not sign it, it was valid only for the first year. Hinkhouse, 112 Wash. at 256. Hinkhouse does not discuss tenancy at sufferance, much less support Tandem's assertion that it was a tenant at sufferance.

Tandem also cites RCW 59.04.050 and Sarvis v. Land Resources, Inc., 62 Wn. App. 888, 815 P.2d 840 (1991), to support its status as a tenant at

10

sufferance. RCW 59.04.050 provides, "Whenever any person *obtains*
*possession* of premises without the consent of the owner . . . , he or she shall be
deemed a tenant by sufferance merely." (Emphasis added.) In Sarvis, we
applied that statute and held that an individual was a tenant by sufferance
because, "by residing on the property, [he] had 'obtained possession.' " 62 Wn.
App. at 891. But here, unlike in Sarvis, Tandem did not "obtain" possession after
it closed for business Sunday night. Tandem's personal property remained in the
premises, but that was expressly contemplated by the same court order that
terminated the Lease and extinguished Tandem's right to use the premises
without NWCV's consent, which lasted only through Sunday. Cf. DALE A.
WHITMAN, ET AL., THE LAW OF PROPERTY § 6.20 at 212 (4th ed. 2019) ("The
tenant's merely leaving items of personalty behind is not a holding over, because
possession is required."). Under the circumstances presented here, Tandem
was not a tenant by sufferance when NWCV changed the locks on Monday
morning.

Furthermore, even assuming Tandem was a tenant by sufferance as of
Monday morning, Tandem does not cite any authority that supports its assertion
that a writ of restitution obtained via an unlawful detainer action is the exclusive
means to remove such a tenant. Indeed, under the common law, the landlord
"has an election to treat the tenant [at sufferance] as a trespasser and to oust
him without advance notice." 17 WILLIAM B. STOEBUCK & JOHN W. WEAVER,
WASHINGTON PRACTICE: REAL ESTATE: PROPERTY LAW § 6.74 at 434 (2d ed. 2004);
see also 4 THOMPSON ON REAL PROPERTY § 39.05(d) at 596-97 (David A. Thomas

11

ed., 3d ed. 2017) (tenancy at sufferance "continues until the landlord acts to alter the unexpected extension of the tenant's presence on the landlord's property," and "[h]istorically, the landlord could forcibly remove the tenant and the tenant's goods as long as the landlord acted reasonably"); WHITMAN, supra, § 6.75 at 311 ("[I]t stretches the imagination to say that a tenant at sufferance (who becomes such by a non-permissive holding over) is truly a tenant."). Although Tandem points to statutes that now prohibit such ousters in the residential context, it identifies no statutory counterpart in the commercial context.

Tandem also points to Nelson v. Swanson, 177 Wash. 187, 31 P.2d 521 (1934), Gray v. Pierce County Housing Authority, 123 Wn. App. 744, 97 P.3d 26 (2004), and Olin, 39 Wn. App. at 688. But none of these cases involved a tenant at sufferance. See Nelson, 177 Wash. at 190-91 (landlord liable for forcibly ejecting tenant who was merely in default by entering tenant's hotel during business hours, announcing that he was "taking charge" and, when tenant objected, picking the tenant up and throwing him on the sidewalk); Gray, 123 Wn. App. at 757 (seven-day lockout provision in housing authority's contracts with participants in an educational program violated residential landlord tenant act); Olin, 39 Wn. App. at 691 (lockout of tenant unlawful where tenant retained right to re-enter premises upon its assignee's abandonment). Also, none involved a lease that was terminated by court order or a tenant whose right to use the premises was also terminated by court order. And, none involved a "lockout" that occurred in the tenant's absence and only after a court had ordered the tenant to surrender possession, the landlord's consent to further use had ended, and the

12

landlord had given notice of its intent to change the locks. <u>Nelson</u>, <u>Gray</u>, and <u>Olin</u> do not require reversal.

As a final matter, Tandem correctly observes, quoting <u>Priestley Mining & Milling Co. v. Lenox Mining & Development Co.</u>, that the purpose of a writ of restitution is "to prevent violations of the peace in disputes over the possession of real estate, regardless of the claim of right or title under which the entry is made." 41 Wn.2d 101, 103, 247 P.2d 688 (1952). To this end, it may have been advisable for NWCV to obtain a writ given that a breach of the peace could have occurred had the Havens shown up at the premises while NWCV was changing the locks.[4] Nevertheless, the trial court did not err by concluding under the circumstances that NWCV's decision not to do so was not a breach of the Lease, a breach of the covenant of quiet enjoyment, or a wrongful eviction as a matter of law.

## Fees on Appeal

"A party is entitled to attorney fees on appeal if a contract, statute, or recognized ground of equity permits recovery of attorney fees at trial and the party is the substantially prevailing party." <u>Hwang v. McMahill</u>, 103 Wn. App.

---

[4] We need not and do not decide whether NWCV would have been required to initiate an unlawful detainer action to obtain a writ under the circumstances presented here. <u>Cf</u>. <u>In re Marriage of Cox</u>, No. 81966-6-I, slip op. at 5-6 (Wash. Ct. App. Dec. 20, 2021) (observing that "there is no authority for the proposition that a writ of restitution is only available under ch. 59.12 RCW"), https://www.courts.wa.gov/opinions/pdf/819666.pdf. Accordingly, we also do not address the parties' arguments about whether a superior court would have had jurisdiction to entertain an unlawful detainer action given the bankruptcy court's order and whether the bankruptcy court's order constituted *res judicata* as to any such action.

945, 954, 15 P.3d 172 (2000). Here, each party argues it is entitled to an award of appellate fees under the Lease, which provides, "In the event a party to this Lease brings a suit or action arising out of this Lease against the other party, the prevailing party shall be entitled to recover . . . such sum as the Court may adjudge to be a reasonable attorneys' fee." Also, neither party argues that this action does not "arise" out of the Lease or that the other party is not entitled to an award of attorney fees under the Lease should that other party prevail on appeal. For these reasons, and because NWCV is the prevailing party on appeal, we award NWCV its reasonable attorney fees on appeal subject to its compliance with RAP 18.1.

We affirm.

_____

WE CONCUR:

_____    _____