[No. 33368. Department One. January 5, 1956.]

W. E. SMITH, *Respondent*, v. R. V. DOWNS, *Appellant*.[1]

[1]Reported in 292 P. (2d) 205.

*Charles T. Sharp,* for appellant.

*D. W. Moore,* for respondent.

SCHWELLENBACH, J.—W. E. Smith is in the garage and motor car business in Clarkston, Washington. August 9, 1954, he sold a Chevrolet pickup truck to R. V. Downs, who took immediate possession. The purchase price was $1,125, and a down payment of $375 was made. The parties executed an instrument (on a form prepared by Universal C.I.T. Credit Corporation) entitled, "CONDITIONAL SALE CONTRACT." Underneath the title was printed, "Idaho, Nevada, New Hampshire, North Dakota, Oregon and Tennessee." The instrument stated that title to the pickup was retained by the seller until the balance was paid in full. It provided for monthly installments of $52.59 each. It also provided:

"If Customer defaults on any obligation under this contract, or if the holder shall consider the indebtedness or the car insecure, the full balance shall without notice become due forthwith, together with a reasonable sum (15% if permitted by law) as attorney's fees, if this contract is placed with an attorney. Customer agrees in any such case to pay said amount, or, at holder's election, to deliver the car to the holder, and holder may, without notice or demand for performance or legal process, enter any premises where the car may be found, take possession of it and custody of anything found in it, and retain all payments as compensation for use of the car while in Customer's possession. The car may be sold with or without notice, at private or public sale (at which the holder may purchase) with or without having the car at the sale; the proceeds less all expenses shall be credited on the amount payable hereunder; *Customer shall pay any remaining balance forthwith as liquidated damages for the breach of this contract and shall receive any surplus.*" (Italics ours.)

The agreement was assigned to the Universal C.I.T. Credit Corporation, which thereafter reassigned to Smith.

No monthly payments having been made, Smith caused the sheriff of Asotin county to seize the truck under a writ of replevin. Smith then commenced this action, asking for

possession of the truck or, in the alternative, for judgment for the amount due, plus costs and attorney's fees. Downs answered and cross-complained, alleging that the agreement constituted a chattel mortgage, that title passed to him upon the execution of the agreement, and praying for damages for conversion. The trial court entered judgment awarding possession to the plaintiff. This appeal follows.

In *West American Finance Co. v. Finstad*, 146 Wash. 315, 262 Pac. 636, a dealer, in consideration of $400 paid down and $930.94 to be paid by installments, sold an automobile under a so-called conditional sales contract, and on the same day assigned the contract to West American Finance Company. Later, the vendee redelivered the automobile to the dealer, who sold and delivered it to Finstad in consideration of a cash payment of $975. Finstad had no knowledge of the prior transaction.

There being a default in the terms of the contract which had been assigned to the finance company, it brought action against Finstad to recover the automobile. A nonsuit was granted at the close of the plaintiff's case, the trial court holding that the contract assigned to the finance company was, in legal effect, a chattel mortgage, and, lacking an affidavit of good faith and an acknowledgment, it was void as to the defendant, an innocent purchaser in good faith.

The instrument was entitled, "Contract of Conditional Sale." It provided that title would remain in the seller until the balance was paid in full. It also provided that, upon default, the seller or its assigns might, without demand or notice, take immediate possession and might resell; that, from the proceeds of the sale, the seller or its assigns should deduct all expenses of retaking, repairing, and reselling, and also a reasonable attorney's fee; and that the balance should be applied on the obligation of the purchase. It also provided, "in case the net proceeds of said sale shall be insufficient to discharge the purchaser's obligations hereunder in full, the purchaser will pay any such deficiency with interest at the rate of 7% per annum from such sale until paid upon demand."

In affirming the trial court, we stated that the fact that the instrument was called a contract of conditional sale was not controlling, and the fact that, by one of the terms of the agreement, the title was to remain in the seller until the purchase price was paid, did not necessarily import that the transaction was a conditional sale. We said:

"The contract is to be construed according to the intention of the parties signing it, as deducible from all the terms employed, which, of course, embrace those relating to substantial rights as well as those relating to remedies. Conditional sales are not favored in the law, and

"'Where it is doubtful, from the face of an instrument, whether the contract is a conditional sale or a mortgage, the courts generally treat it as a mortgage, for the reason that such construction will be most apt to attain the ends of justice and prevent fraud and oppression.' *Low v. Colby,* 137 Wash. 476, 243 Pac. 18.

"  .   .   .

"In this case, we may well follow the reasoning in the case of *Heryford v. Davis, supra,* and inquire, what was this agreement but treating the purchaser's promise to pay, at all events, the full price of the property as a debt absolutely due to the vendor? What was it but treating the property as security for the debt? And why stipulate that the surplus over costs and expenses which might be obtained from the sale of the property, after taking it back, beyond what was needed to pay the unpaid part of the debt, should be paid over to the purchaser, if the purchaser was not the owner of the car.

"In our opinion the instrument in this case transferred the title to the car to the purchaser and constituted a mortgage back by him to the seller."

*Raymond Bros. Impact Pulverizer Co. v. Thomas,* 159 Wash. 550, 294 Pac. 219, was, like this case, an action in replevin to recover possession of certain machinery. By answer, the defendant asserted title to the property. In that action, as in this, no rights of an innocent purchaser for value were involved. The contract purported to be a conditional sale and contained many provisions similar to those contained in the agreement involved herein. It provided:

" 'Should the proceeds of such sale not cover the balance remaining due the company, together with the cost of re-

moval and sale, the purchaser shall pay the deficiency to the company forthwith after such sale.' "

We held that, where a contract purports to be a conditional sale but after default, retaking of the property, and sale thereof, the relation of debtor and creditor remains as to any balance that may be due, then the contract by its terms is a chattel mortgage, even though on its face it purports to be a conditional sale; that, under those circumstances, the title passes at the time the contract is made and the property delivered; and that then it necessarily follows that the same rule should be applied when the question arises between the original parties as is applied when the rights of third parties are involved.

In *Lahn & Simmons v. Matzen Woolen Mills,* 147 Wash. 560, 266 Pac. 697, we laid down the following rules of law:

In a conditional sale contract, the absolute title remains in the vendor. In a chattel mortgage, the title is in the mortgagor and the mortgagee has only a lien thereon.

In determining whether the contract be one of conditional sale or something else, the name which the parties may have given to the instrument is not controlling. The answer is to be found in the intention of the parties gathered from the language which they have used in the contract.

A contract of conditional sale creates the relation of vendor and vendee. The relation of debtor and creditor is not created. It is not the function of a conditional bill of sale to secure a money loan. Its purpose is to permit the owner of personal property to make a sale on credit, reserving the title in itself as security until the purchase price is fully paid.

The *Finstad* case was decided in 1928. It and subsequent decisions have since been followed without modification. It is the law of this state that, where the contract provides that, after default and retaking of the property and sale thereof, any deficiency remaining shall be paid as liquidated damages, regardless of any of its other provisions, it creates the relation of debtor and creditor and title passes upon the execution of the contract.

The trial court recognized that, under the rule of the above cases, the agreement was a chattel mortgage and not a conditional sales contract. However, it was of the opinion that the Washington highway license act of 1937 changed the rule, and that the agreement in question must be held to be a conditional sales contract and not a chattel mortgage.

RCW 46.04.270 defines "legal owner" as follows:

" 'Legal owner' means a mortgagee or owner of the legal title to a vehicle."

RCW 46.04.380 defines "owner" as follows:

" 'Owner' means a person who holds a title of ownership of a vehicle, or in the event the vehicle is subject to an agreement for the conditional sale or lease thereof with a right of purchase upon performance of the conditions stated in the agreement and with the immediate right of possession vested in the conditional vendee or lessee, or in the event a mortgagor of a vehicle is entitled to possession, then any such conditional vendee or lessee, or mortgagor having a lawful right of possession or use and control for a period of ten or more successive days."

RCW 46.04.460 defines "registered owner" as follows:

" 'Registered owner' means a person who holds a certificate of ownership of a vehicle, or in the event the vehicle is subject to an agreement for the conditional sale or lease thereof with a right of purchase upon performance of the conditions stated in the agreement and with the immediate right of possession vested in the conditional vendee or lessee, or in the event a mortgagor of a vehicle is entitled to possession, then any such conditional vendee or lessee, or mortgagor having a lawful right of possession or use and control for a period of ten or more successive days."

RCW 46.12.170 provides:

"If, after a certificate of ownership is issued, a mortgage is placed on the vehicle described therein, the registered owner shall, within ten days thereafter, present his application to the director, signed by the mortgagee, to which shall be attached the certificate of license registration and the certificate of ownership last issued covering the vehicle, which application shall be upon a form provided by the director and shall be accompanied by a money order, bank draft, or certified bank check for one dollar. The director,

if he is satisfied that there should be a reissue of the certificates, shall note such change upon his records and issue to the registered owner a new certificate of license registration and to the mortgagee a new certificate of ownership.

"Upon the payment in full of a contract or mortgage on a vehicle, the legal owner or mortgagee shall assign the certificate of ownership and deliver it to the registered owner, who shall within ten days thereafter present the certificate of ownership and certificate of license registration to the director accompanied by a fee of one dollar, together with an application for reissue thereof, which application shall be handled by the director as in the case of an original application for a certificate of license registration and certificate of ownership. Upon the payment in full of a contract or mortgage on a vehicle the legal owner or mortgagee shall immediately notify the director of such fact on a form to be provided by the director."

█ The enactment of the license act did not change the substantive law in this state with respect to the effect of a provision in a contract such as is involved herein. It did not change the status of the parties. Appellant was the mortgagor, and therefore the holder of the legal title, and respondent was the mortgagee. Respondent was given certain rights under RCW 46.12.170 to protect his lien as against innocent purchasers or encumbrancers. See *Merchants Rating & Adjusting Co. v. Skaug*, 4 Wn. (2d) 46, 102 P. (2d) 227.

█ The trial court was also of the opinion that the parties dealt with each other with full knowledge of what each intended, and that they intended the transaction to be a conditional sale. In *Roberts v. Speck*, 170 Wash. 324, 16 P. (2d) 463, involving a similar situation, wherein a similar contention was made, we said:

"It is now the law of this jurisdiction that the use of certain words in the contract between the parties must be held to lead to certain legal consequences, even though the parties may not have intended such a result."

The trial court, because of its decision, made no finding as to appellant's damage, and we do not care to usurp that function.

The judgment is reversed and remanded, with direction to dismiss respondent's complaint and to award to appellant such relief as the trial court determines he is entitled to under the evidence.

HAMLEY, C. J., DONWORTH, FINLEY, and OTT, JJ., concur.