[No. 10114-9-II.   Division Two.   April 19, 1988.]

PARIS AMERICAN CORPORATION, Appellant, v. C. BRENT McCAUSLAND, ET AL, Respondents.

*Joseph P. Tall* and *Sorrel & Palken, Inc., P.S.,* for appellant.

*Mary J. Urback, James R. Verellen,* and *Kane, Vandeberg, Hartinger & Walker,* for respondents.

ALEXANDER, J.—Paris American Corporation d/b/a Paris Beauty Supply Company appeals a summary judgment of the Pierce County Superior Court in favor of Brent and Colleen McCausland. On appeal, Paris Beauty Supply asserts that its seller's security interest in certain tanning equipment located on leased premises took priority over the

landlord's (McCauslands') lien for unpaid rent. We reverse, holding that the McCauslands' otherwise valid landlord's lien expired because of their failure to bring an action to enforce the lien within 2 months of the date their tenant defaulted in the payment of rent.

The McCauslands leased a commercial building in Pierce County to Body Wrap International, Inc., d/b/a Total Tan Company. The unrecorded lease was for a 5–year period, and it provided that Total Tan would make monthly rental payments to the McCauslands of $1,826. Total Tan began occupying the premises on March 1, 1984.

On May 31, 1984, Total Tan contracted to purchase some tanning equipment from Paris Beauty Supply. The equipment was delivered to Total Tan on June 3, 1984, and it was installed on the leased premises. A security agreement covering the tanning equipment was executed by Paris Beauty Supply and Total Tan, and a U.C.C. filing statement was duly recorded on June 20, 1984.

In November 1985, the McCauslands notified Total Tan that it was in default on the lease agreement because it had failed to make the required monthly lease payments. The McCauslands subsequently learned that the operators of Total Tan were no longer operating the business. Consequently, the McCauslands sent a notice to Total Tan on December 3, 1985, advising it that they were asserting a landlord's lien on all the personal property located on the leased premises and that they would be conducting a sale of "the property" at a time and place to be determined, unless "other arrangements" were promptly made.

On the same date, the McCauslands sent a notice to Total Tan, as follows:

> You are hereby notified and required to pay the sum of $6,208.11 to Lessor within ten (10) days of the date of service of this Notice upon you or, in the alternative, to vacate the premises and surrender possession of the premises to Lessor within said ten (10) day period.

Early in December 1985, the McCauslands ordered a U.C.C. search. On March 1, 1986, they leased the premises

to a new tenant. Paris Beauty Supply then advised the McCauslands that it was asserting its security interest in the equipment, which was still located on the McCauslands' premises.

The McCauslands and Paris Beauty Supply were unable to resolve their differences over the equipment, and on April 17, 1986, the McCauslands sent a notice of public sale of personal property to Paris Beauty Supply.[1] Paris Beauty Supply then commenced this action against the McCauslands for damages for what it claimed was the McCauslands' conversion of and trespass to its chattels.

Both parties moved for summary judgment, stipulating to facts essentially consistent with those recited above. The trial court granted summary judgment to the McCauslands in the amount of $4,138.76 (2 months' rent of $1,826 per month, together with an amount for taxes, etc.) concluding that they had a valid landlord's lien for 2 months' rent. Paris Beauty Supply's motion for reconsideration was denied and it appeals to this court. Both parties concede that the facts are undisputed.

If the facts submitted in support of a motion for summary judgment are uncontroverted, the court determines whether the moving party is entitled to a summary judgment as a matter of law. *Hodgkins v. State,* 9 Wn. App. 486, 490-92, 513 P.2d 304 (1973). In our view, the issue here is solely one of law and the case is, therefore, ripe for summary judgment.

I

STANDING

The McCauslands contend, at the outset, that the claims being raised by Paris Beauty Supply are really the claims of the tenant, Total Tan, and that Paris Beauty Supply does not have standing to raise the tenant's claims. This argument is without merit.

---

[1]The notice was amended on May 8, 1986, to indicate that the sale would be private.

■ A party has standing to raise an issue if that party has a distinct and personal interest in the issue. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 86 L. Ed. 2d 628, 637, 105 S. Ct. 2965, 2972 (1985). Here, Paris Beauty Supply's security interest in the tanning equipment would be deemed superior to the McCauslands' lien for rent, if Paris Beauty Supply can establish that the McCauslands' landlord's lien fails because of Total Tan's defenses to the claim of lien. Thus, Paris Beauty Supply has a personal interest in the issue and, consequently, has standing to raise Total Tan's defenses.

## II
### PRIORITY OF LANDLORD'S LIEN FOR RENT VIS-A-VIS SECURITY INTEREST OF SELLER OF CHATTELS

Paris Beauty Supply contends that, as a matter of law, its security interest in the equipment is superior to the McCauslands' lien for 2 months' rent. The McCauslands contend that their lien for 2 months' rent is superior.

Significantly, landlord's liens are excluded from the provisions of the U.C.C., pursuant to RCW 62A.9-104, which states: "This Article does not apply . . . (b) to a landlord's lien". In addition, RCW 62A.9-102 provides that "[t]his Article does not apply to *statutory liens* except as provided in RCW 62A.9-310." (Italics ours.) RCW 62A.9-310[2] applies only in cases "[w]hen a person in the ordinary course of his business furnishes services or materials with respect to goods subject to a security interest . . ." Paris Beauty Supply makes no claim that it furnished services or materials "with respect to the goods." Thus, the provisions

---

[2]At the time Total Tan purchased the equipment from Paris Beauty Supply, RCW 62A.9-310 provided:

"When a person in the ordinary course of his business furnishes services or materials with respect to goods subject to a security interest, a lien upon goods in the possession of such person given by statute or rule of law for such materials or services takes priority over a perfected security interest only if the lien is statutory and the statute expressly provides for such priority."

of the U.C.C. do not apply to the McCauslands' lien for rent.

When a statutory lien is exempt from the provisions of the U.C.C., Article 9, the priority of the statutory lien relative to a protected security interest is governed by pre-code statutory and common law. *In re Brazier Forest Prods., Inc.,* 106 Wn.2d 588, 599–601, 724 P.2d 970 (1986). Here, RCW 60.72.010, which predates the adoption of the U.C.C., provides in pertinent part:

> Any person to whom rent may be due, his executors, administrators, or assigns, shall have a lien for such rent upon personal property which has been used or kept on the rented premises by the tenant, . . . Such liens for rent shall be paramount to, and have preference over, all other liens except liens for taxes, general and special liens of labor, and *liens of mortgages* duly recorded prior to the tenancy. . . .

(Italics ours.)

Here, there is no evidence that Paris Beauty Supply's security interest in the tanning equipment was anything other than a mortgage lien. *See* RCW 62A.2–401; *Smith v. Downs,* 48 Wn.2d 165, 169, 292 P.2d 205 (1956). Because Total Tan began leasing the premises from the McCauslands on March 1, 1984, and Paris Beauty Supply's U.C.C.–1 financing statement was not recorded until June 20, 1984, the McCauslands' lien for 2 months' rent took precedence over Paris Beauty Supply's security interest in the property located on the leased premises until it expired.

Paris Beauty Supply, citing RCW 65.08.070,[3] additionally contends that because the lease agreement was not recorded, the lease is void as to Paris Beauty Supply. This contention is without merit because the cited statute does not apply to personal property.

---

[3]The statute provides in pertinent part: "Every such conveyance not so recorded is void as against any subsequent purchaser or mortgagee in good faith and for a valuable consideration from the same vendor, . . . of the same *real property* or any portion thereof whose conveyance is first duly recorded. . . ." (Italics ours.)

## III
### EXPIRATION OF MCCAUSLANDS' LANDLORD'S LIEN

Paris Beauty Supply contends that the McCauslands' landlord's lien, even if initially superior to its lien, expired on or before April 1, 1986, because the McCauslands did not bring their action to foreclose their lien within 2 months of Total Tan's default in the payment of rent as required by RCW 60.72.010. We agree.

RCW 60.72.010 provides in relevant part:

Such liens shall not be for more than two months' rent due or to become due, nor for any rent *or any installment thereof which has been due for more than two months* at the time of the commencement of an action to foreclose such liens; . . .

(Italics ours.)

■ A landlord's lien is a creature of statute, the lien not being recognized at common law. *Swanson v. White,* 83 Wn.2d 175, 178, 517 P.2d 959 (1973). Therefore, the lien is to be strictly construed against the landlord. *Swanson,* 83 Wn.2d at 178. In order to claim the benefits of a statutory lien, the person claiming benefits must demonstrate that he or she has strictly complied with the statute. *Kinskie v. Capstin,* 44 Wn. App. 462, 464, 722 P.2d 876 (1986). "When the limit fixed by the statute for the duration of the lien has passed, the lien ceases to exist, and is not thereafter enforcible [*sic*]." *United Cigar Stores Co. of Am. v. Florence Shop,* 171 Wash. 267, 272, 17 P.2d 871 (1933).

Paris Beauty Supply contends that because a nonjudicial foreclosure of a landlord's lien is commenced by "notice and sale," under RCW 60.10.030(1), and because the McCauslands' notice of sale was not given until April 17, 1986, the notice was given more than 2 months after the last installment of rent became due. The lien, it argues, ceased to exist after the 2–month period elapsed.

The McCauslands counter by arguing that RCW 60.72-.010 refers only to "an action" filed in superior court, and that the summary foreclosure procedure authorized in

RCW 60.10.020 does not constitute an "action" subject to the 2–month limitation referred to in RCW 60.72.010.

The McCauslands refer to RCW 60.72.040 which provides that a landlord's lien may be foreclosed as provided in RCW 60.10 (personal property liens); RCW 61.12.162 (judicial foreclosure of personal property liens). RCW 60.10.020 provides:

> Any lien upon personal property, excluded by RCW 62A.9–104 from the provisions of the Uniform Commercial Code (Title 62A RCW), may be foreclosed *by an action in the superior court* having jurisdiction in the county in which the property is situated in accordance with RCW 61.12.162, *or it may be foreclosed by summary procedure* as provided in this chapter.

(Italics ours.) The McCauslands contend that because the portion of RCW 60.10.020 referring to foreclosure by summary procedure does not contain the term "action," the word "action" in RCW 60.72.010 refers only to actions filed in superior court. We disagree.

▌ In *Dolman v. Department of Labor & Indus.*, 105 Wn.2d 560, 565, 716 P.2d 852 (1986), our Supreme Court had occasion to interpret the meaning of the term "action," albeit in a slightly different context. In *Dolman,* the court held that the word "action" in RCW 51.16.190(1) was ambiguous. The court construed the word "action" in that statute to include the issuance of a notice of assessment by the Department of Labor and Industries, as well as actions in superior court. We find that the reasoning in *Dolman* is persuasive here. The word "action," in the phrase "commencement of an action to foreclose such liens", not being defined in RCW 60.72.010, is equally ambiguous. In our judgment the words of the statute, when viewed in light of the entire statutory scheme, are broad enough to include the summary procedures for nonjudicial foreclosure of landlord's liens. Like the court in *Dolman,* we see no reason why the term should apply to superior court actions and not to out–of–court foreclosure proceedings. Here, because the McCauslands' notice of public sale was not given until

April 17, 1986, which was more than 2 months after the last installment of rent became due, the McCauslands' lien had expired at the time their action for foreclosure was commenced.[4]

The McCauslands argue, in the alternative, that they commenced a foreclosure action by taking possession of the tanning equipment in December. We reject this argument, however, because RCW 60.10.030(1) provides:

(1) A lien foreclosure authorized by RCW 60.10.020 may be summarily foreclosed by notice and sale as provided herein. . . .

It is clear from the above language that notice is necessary to commence a summary lien foreclosure and that mere possession of the property is insufficient.

The McCauslands also contend that the December 3 notice was sufficient notice of the summary foreclosure proceedings. We disagree.

Their notice stated:

Please be advised that based upon the existing default in payment of rent and your failure to cure the default and rent pursuant to the demand letter of November 7, 1985, Mr. and Mrs. Charles Brent McCausland, as landlord, are hereby asserting a landlord's lien upon personal property used or kept on the rented premises for two months' rent.

Please take notice that unless other arrangements are promptly made with the landlord the landlord shall proceed to conduct a commercially reasonably [sic] sale of the property by means and at a date and time to be determined.

RCW 60.10.030(3) sets forth the requirements for notice of sale.

Unless collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, *reasonable notification of the time*

---

[4]Total Tan defaulted in the rent payments that were due on November 1, December 1, January 1, and February 1. In order for the McCauslands to have perfected the landlord's lien for the February rent, they would have had to commence this "action" by April 1.

*and place of any public sale or reasonable notification* of the time after which any private sale or other intended disposition is to be made shall be sent by the lien holder to the lien debtor, and except in the case of consumer goods to any other person who has a security interest in the collateral . . .

(Italics ours.)

The McCauslands' notice did not notify Total Tan whether the sale would be public or private. Neither did it specify the time and place of a public sale, nor the time after which a private sale would take place. In our judgment, the notice of December 3 was insufficient notice under RCW 60.10.030(3).

## IV
### CONVERSION

The McCauslands contend that even if their lien had expired, a valid dispute existed concerning the priorities of the liens and, consequently, they should not be liable for damages for conversion. We disagree.

■ "A conversion is a willful interference with a chattel without lawful justification, whereby a person entitled thereto is deprived of the possession of it." *Olin v. Goehler,* 39 Wn. App. 688, 693, 694 P.2d 1129, *review denied,* 103 Wn.2d 1036 (1985). Wrongful intent is not a necessary element of conversion, and good faith cannot be shown as a defense to conversion. *Clapp v. Johnson,* 186 Wash. 327, 57 P.2d 1235 (1936).

■ In *Olin,* however, we held that when a valid dispute exists concerning the claims to personal property, possession can be lawfully denied for as long as reasonably necessary to determine the identity of the rightful claimant. *Olin,* 39 Wn. App. at 694. Similarly, the court in *Layman v. Swanson,* 3 Wn.2d 370, 377, 101 P.2d 304 (1940) stated that "where a refusal [to return property] is not absolute, but is qualified, it will not serve as a sufficient basis for an action of conversion . . ." In both *Olin* and *Layman,* the "qualified refusal" rule was applied in a situation in which the holder of the property was a bailee of the property. We

conclude that in Washington, the qualified refusal rule applies only to bailees, trustees, or other similarly situated holders who, as stakeholders of the property, are justified in maintaining possession while they conduct an investigation of the claimant's right to possession of the property. While perhaps a party claiming an interest for that party's own benefit would be justified in withholding the property for a reasonable period of time in order to determine the identity of a claimant, that party would not be justified in withholding the property for a longer period of time in order to enforce its interest in the property. A party doing so risks being deemed a converter of the property in the event that the party's claim to possession is found wanting.

Here, the McCauslands withheld possession of the personal property for their own benefit, and clearly for a period longer than was necessary to determine Paris Beauty Supply's identity. They were not mere stakeholders and in our judgment, their good faith belief in their lien interest in the property was an insufficient defense to Paris Beauty Supply's action for conversion.

We reverse the summary judgment in favor of the McCauslands and remand the matter to the trial court for entry of summary judgment in favor of Paris Beauty Supply and for determination of the damages that Paris Beauty Supply suffered as a result of the conversion of the tanning equipment.

REED, C.J., and WORSWICK, J., concur.

After modification, further reconsideration denied September 6, 1988.

Review denied by Supreme Court January 10, 1989.