IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| THOMAS F. MERRY, | ) | No. 32603-9-III |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| QUALITY LOAN SERVICE CORP. OF | ) | |
| WASHINGTON, INC.; JPMORGAN | ) | |
| CHASE BANK NATIONAL | ) | |
| ASSOCIATION, | ) | |
| | ) | |
| Respondents. | ) | |

LAWRENCE-BERREY, J. — The trial court granted the respondents' summary

judgment motions dismissing Thomas Merry's complaint.  In general, Mr. Merry alleges

that he is the owner of a note secured by a deed of trust, and challenges both the bank's

senior deed of trust and the trustee's right to foreclose that deed of trust.  Prior to

summary judgment, the trustee discontinued the trustee's nonjudicial foreclosure sale.  In

granting summary judgment dismissal, the trial court concluded as a matter of law that

Mr. Merry lacked standing and no justiciable controversy existed.  We conclude that no

justiciable controversy exists between Mr. Merry and the trustee.  We however conclude

that a justiciable controversy exists between Mr. Merry and the bank. We reach the merits of that controversy and affirm the summary judgment dismissal on that alternate basis.

## FACTS

On January 31, 2001, property owners and nonparties Gaery and Janet Rutherford signed a promissory note (Note) to obtain a $210,000 loan from Washington Mutual Bank (Washington Mutual). The Note included a statement that the Rutherfords "understand that [Washington Mutual] may transfer this Note." Clerk's Papers (CP) at 77. The Note is endorsed in blank.[1] To secure their obligations under the Note, the Rutherfords also signed the subject Deed of Trust on the same date, granting Washington Mutual a security interest in the property located at 17600 Chumstick Highway, Leavenworth, Washington 98826. The Deed of Trust is ostensibly in first position and provides that "[t]he Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower." CP at 86. Pioneer Title Company—Wenatchee is listed as the trustee on the Deed of Trust.

---

[1] The Note also included a statement that "[t]he Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the 'Note Holder.'" CP at 77.

2

On September 25, 2008, JPMorgan Chase Bank (Chase) acquired Washington Mutual's loan assets, including all of its loans, mortgage servicing rights, and obligations, from the Federal Deposit Insurance Corporation (FDIC), after the federal government's Office of Thrift Supervision placed Washington Mutual in receivership. The Purchase and Assumption Agreement (P&A Agreement) sets forth the terms of the sale. On February 19, 2013, Chase, in its capacity as attorney-in-fact, for FDIC assigned itself FDIC's interest in the Deed of Trust.

The Rutherfords defaulted on their loan. On April 24, 2013, Chase appointed Quality Loan Service Corporation of Washington (Quality) successor trustee under the Deed of Trust. The Deed of Trust provides the trustee with the power of sale in the event of default. Due to the Rutherfords' default, Quality issued a Notice of Default on May 8, 2013. Chase executed a Beneficiary Declaration stating it was the "holder" of the Note on May 9, 2013. CP at 184.

Mr. Merry is not a party to the Rutherford Note or Deed of Trust. He is a junior lienholder ostensibly in fourth position.

On August 13, 2013, Quality issued a Notice of Trustee's Sale against the property, scheduling an auction date for December 13, 2013. The sale was subsequently continued beyond that date.

Mr. Merry filed an action on December 19, 2013, seeking declaratory relief against Chase and Quality. Mr. Merry sought to invalidate Chase's security interest and Quality's status as trustee under various theories.

Chase and Quality filed motions for summary judgment on March 5, 2014, and March 13, 2014, respectively. In its motion for summary judgment, Chase stated it acquired the Rutherfords' original Note and Deed of Trust pursuant to the P&A Agreement. In support of its motion, Chase filed declarations of two of its employees, Amber Alegria and Sunserayer W. Edwards. In Ms. Alegria's declaration, she stated Chase now holds the Rutherfords' original Note and Deed of Trust. In Mr. Edwards's declaration, he stated Chase has held the original Note since 2009.

In his motion opposing summary judgment, Mr. Merry contended the Note was not included in the assets Chase acquired pursuant to the P&A Agreement. Instead, he argued that Chase, while acting as attorney-in-fact for the FDIC, assigned itself the Deed of Trust and the Note on February 19, 2013. In his brief on appeal, Mr. Merry now contends that Chase only assigned itself the Deed of Trust, not the Note, on February 19, 2013. Mr. Merry also argues that to prove its status as a holder, Chase should have produced the original Note for examination by the court, and it failed to do so.

4

At the summary judgment hearing on April 11, 2014, Chase's attorney advised the court that the trustee's sale had been discontinued for a pending loan modification. The trial court requested additional briefing to address whether Mr. Merry had standing to bring his action. On May 23, 2014, after supplemental briefing was submitted, the trial court granted summary judgment and dismissed the complaint with prejudice. The order granting Chase's and Quality's summary judgment motions was entered on May 29, 2014. The court determined that Mr. Merry lacked standing to bring the suit because (1) there was no justiciable controversy since there was no pending foreclosure sale, and (2) Mr. Merry lacked standing to seek declaratory judgment under Washington's deeds of trust act (DTA), chapter 61.24 RCW, because he was not "within the zone of interests protected by the DTA and he otherwise failed to show any injury." CP at 287. Mr. Merry appeals.

## ANALYSIS

A trial court's decision on summary judgment is reviewed de novo, meaning this court will engage in the same inquiry as the trial court. *Nivens v. 7-11 Hoagy's Corner*, 133 Wn.2d 192, 197, 943 P.2d 286 (1997). A trial court's ruling on the admissibility of evidence in a summary judgment proceeding is also reviewed de novo. *Folsom v. Burger King*, 135 Wn.2d 658, 663, 958 P.2d 301 (1998). Summary judgment is proper "if the

pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c). "The facts and all reasonable inferences therefrom must be considered in the light most favorable to the nonmoving party." *Degel v. Majestic Mobile Manor, Inc.*, 129 Wn.2d 43, 48, 914 P.2d 728 (1996). The facts presented must be more than "speculative and argumentative assertions." *Adams v. King County*, 164 Wn.2d 640, 647, 192 P.3d 891 (2008). "Mere allegations or conclusory statements of facts unsupported by evidence are not sufficient to establish a genuine issue." *Rucker v. NovaStar Mortg., Inc.*, 177 Wn. App. 1, 10, 311 P.3d 31 (2013).

1.    *Whether Mr. Merry's action is justiciable*

Chase and Quality contend that Mr. Merry, as a third party stranger to the Note, Deed of Trust, and related subsequent assignments and appointments, did not have standing to bring this action. Quality also argues that because the trustee's sale was discontinued when the court heard and decided the motions for summary judgment, there was no activity for the court to enjoin and, thus, the court properly dismissed the claim for injunctive relief.

Mr. Merry's claims for declaratory relief are governed by the Uniform Declaratory

Judgments Act (DJA), chapter 7.24 RCW. Under the DJA, courts are authorized "to

declare rights, status and other legal relations." RCW 7.24.010. "[B]efore the

jurisdiction of a court may be invoked under the [DJA], there must be a justiciable

controversy." *To-Ro Trade Shows v. Collins*, 144 Wn.2d 403, 411, 27 P.3d 1149 (2001).

"Justiciable controversy" is defined as

> "(1) . . . an actual, present and existing dispute, or the mature seeds of one,
> as distinguished from a possible, dormant, hypothetical, speculative, or
> moot disagreement, (2) between parties having genuine and opposing
> interests, (3) which involves interests that must be direct and substantial,
> rather than potential, theoretical, abstract or academic, and (4) a judicial
> determination of which will be final and conclusive." Inherent in these four
> requirements are the traditional limiting doctrines of standing, mootness,
> and ripeness, as well as the federal case-or-controversy requirement. In
> sum, the four justiciability factors must "coalesce" to ensure that the court
> will be rendering a final judgment on an actual dispute between opposing
> parties with a genuine stake in the resolution.

*Id.* (footnote and citations omitted) (quoting *Diversified Indus. Dev. Corp. v. Ripley*, 82

Wn.2d 811, 815, 514 P.2d 137 (1973)).

In *To-Ro*, the court repeated the oft-quoted rule that "'[o]ne may not . . . challenge

the constitutionality of a statute unless it appears that he will be *directly* damaged in

person or in property by its enforcement.'" *Id.* at 411-12 (emphasis in original) (quoting

*DeCano v. State*, 7 Wn.2d 613, 616, 110 P.2d 627 (1941)). In that case, To-Ro

challenged the constitutionality of RCW 46.70.021, a statute that requires all dealers who display their vehicles at trade shows to be licensed. To-Ro is not a dealer. Rather, To-Ro produces consumer trade shows. The court concluded that To-Ro did not have standing for two reasons. First, To-Ro failed to show how the Department of Licensing's enforcement of the challenged statute had harmed or would harm it. *Id.* at 413. Second, the court reasoned: "To have standing to challenge the constitutionality of a statute, a party must show, in addition to 'sufficient factual injury,' that '"the interest sought to be protected . . . is arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question."'" *Id.* at 414 (quoting *Seattle Sch. Dist. No. 1 v. State*, 90 Wn.2d 476, 493-94, 585 P.2d 71 (1978)). The court noted the purpose of the statute was to protect consumers, and determined that To-Ro was not within the zone of interests protected by the statute and therefore had no standing. *Id.* at 415.

Here, Mr. Merry is not challenging the constitutionality of any statute. The heightened test for constitutional standing is not applicable here. Rather, "[a] party has standing to raise an issue if that party has a distinct and personal interest in the issue." *Paris Am. Corp. v. McCausland*, 52 Wn. App. 434, 438, 759 P.2d 1210 (1988) (citing *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 105 S. Ct. 2965, 2972, 86 L. Ed. 2d 628 (1985)); *see also Erection Co. v. Dep't of Labor & Indus.*, 65 Wn. App. 461, 467, 828

8

P.2d 657 (1992), *aff'd*, 121 Wn.2d 513, 852 P.2d 288 (1993); *In re Marriage of T*, 68 Wn. App. 329, 335, 842 P.2d 1010 (1993)). In *Paris American Corp.*, the court held that a creditor has standing to challenge another creditor's security interest by raising the debtor's defenses to the claim of lien. 52 Wn. App. at 438. The court reasoned, because a favorable ruling would cause Paris's lien to be deemed senior to McCausland's lien, Paris had standing. *Id.* The court termed McCausland's argument to the contrary "without merit." *Id.* at 437. We observe that when a property owner lacks equity in property, it is common for a creditor, rather than the property owner, to challenge the other creditors' security interests or liens. *See, e.g., In re Esparza*, 118 Wn.2d 251, 821 P.2d 1216 (1992). We conclude that Mr. Merry, as a secured creditor, has standing to assert the invalidity of Chase's purported senior security interest.

Nevertheless, we agree with the trial court that the controversy between Mr. Merry and Quality was no longer justiciable once Quality caused the nonjudicial foreclosure to be discontinued. At that point, there was no controversy between Mr. Merry and Quality. Although the controversy might be renewed *if* the property owner failed to pay per a modified agreement, and *if* Quality remained the trustee in a new nonjudicial foreclosure proceeding, such contingencies were too speculative at the time of summary judgment to support Mr. Merry's claim of continued justiciability.

Having determined that Mr. Merry's claims against Chase remained justiciable even after the discontinuance of the trustee's sale, we must determine whether we should remand to the trial court for a determination on the merits or whether to reach the merits on appeal. We note that both parties have extensively briefed the substantive issues. We also note that a remand might well land the substantive issues before us again. For these reasons, we exercise our discretion and reach the merits of Mr. Merry's claims against Chase. *Richardson v. Danson*, 44 Wn.2d 760, 764, 270 P.2d 802 (1954).

2.      *Whether Chase is the beneficiary of the Deed of Trust*

Mortgages secured by a deed of trust on the mortgaged property create "'a three-party transaction in which land is conveyed by a borrower, the "grantor," to a "trustee," who holds title in trust for a lender, the "beneficiary," as security for credit or a loan the lender has given to the borrower.'" *Bain v. Metro. Mortg. Grp., Inc.*, 175 Wn.2d 83, 92-93, 285 P.3d 34 (2012) (quoting 18 WILLIAM B. STOEBUCK & JOHN W. WEAVER, WASHINGTON PRACTICE: REAL ESTATE TRANSACTIONS § 17.3, at 260 (2d ed. 2004). Washington's DTA provides a mechanism for trustees to conduct nonjudicial foreclosures on land that is secured by a deed of trust. RCW 61.24.020. The DTA's three goals are (1) for the nonjudicial foreclosure process to "'remain efficient and inexpensive,'" (2) to "'provide an adequate opportunity for interested parties to prevent wrongful

foreclosure,'" and (3) to "'promote the stability of land titles.'" *Bain*, 175 Wn.2d at 94 (quoting *Cox v. Helenius*, 103 Wn.2d 383, 387, 693 P.2d 683 (1985)). Because the DTA generally allows the trustee to foreclose the deed of trust and sell the property without judicial oversight, it grants a significant power. *Id.* at 93. For that reason, Washington courts have construed the DTA in the favor of borrowers. *Id.*

Central to the dispute in this case is what it means to be a "beneficiary" for purposes of the DTA. "Beneficiary" is defined by the DTA as "the *holder* of the instrument or document evidencing the obligations secured by the deed of trust." RCW 61.24.005(2) (emphasis added). The DTA does not define what constitutes a "holder." In *Bain*, the Washington Supreme Court considered what it means to be a "holder" under the DTA. *Bain*, 175 Wn.2d at 104. In its review, the court was guided by the Uniform Commercial Code's (UCC) definition of "holder," as adopted by the Washington legislature at RCW 62A.1-201(21) and RCW 62A.3-301. *Bain*, 175 Wn.2d at 104. After reviewing these provisions, the court stated, "[A] beneficiary must either actually possess the promissory note or be the payee." *Id.* Here, the parties agree that the Note is endorsed in blank and has no specific payee. Thus, the appropriate inquiry is whether any genuine issue of material fact exists as to whether Chase actually possesses the Note.

11

No. 32603-9-III
*Merry v. Qual. Loan Serv. Corp.*

Mr. Merry argues that the trial court erred in dismissing his claim because a genuine issue of material fact exists as to whether Chase actually possesses the Note. In making this argument, Mr. Merry raises a number of issues, including: (1) the court improperly considered the declarations of Chase employees, Amber Alegria and Sunserayer Edwards, (2) Chase improperly relied on the P&A Agreement as the foundation for how it acquired the Note and Deed of Trust, (3) Chase cannot enforce the Note because it is not a "holder in due course (HDIC)," and (4) Chase has not presented the original Note for inspection. Each of these arguments is addressed below.

1. Sufficiency of the Chase Declarations

Mr. Merry contends that the trial court erred by considering the Alegria and Edwards declarations and supporting documents. He argues they were improperly considered because the declarants failed to provide their qualifications for determining authenticity of original documents or the basis for their personal knowledge of the creation and signing of the documents in the files they have access to. However, Mr. Merry did not submit any evidence of his own to dispute their testimony.

CR 56(e) governs the admissibility of these documents, stating:

Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated

12

therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith.

Thus, for this court to find that the Alegria and Edwards declarations were properly admitted, they must meet three requirements: (1) they must be made on personal knowledge, (2) be admissible in evidence, and (3) show affirmatively that the affiant is competent to testify to the information contained in the affidavit. Courts have found the personal knowledge requirement to be satisfied where the proponent of the evidence satisfies the business records statute. *See Discover Bank v. Bridges*, 154 Wn. App. 722, 726, 226 P.3d 191 (2010).

Washington's business record statute provides:

A record of an act, condition or event, shall in so far as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business, at or near the time of the act, condition or event, and if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission.

RCW 5.45.020. Under this statute, the "custodian" and "other qualified witness" need not be the person who created the record. *State v. Ben-Neth*, 34 Wn. App. 600, 603, 663 P.2d 156 (1983). "Testimony by one who has custody of the record as a regular part of his work . . . will suffice." *Id.* In *Discover Bank*, Division Two of this court found that the trial court properly considered the declarations and did not abuse its discretion by

13

considering the business records attached to the declarations. 154 Wn. App. at 726. The

court found the declarations sufficient where the declarants stated that "(1) they worked

for [DFS Services LLC], (2) [they] had access to the Bridgeses' account records in the

course of their employment, (3) [they] made their statements based on personal

knowledge and review of those records and under penalty of perjury, and (4) the attached

account records were true and correct copies made in the ordinary course of business."

*Id.*

Here, the foundation provided by the declarants for their statements is substantially

similar to that of the declarants in *Discover Bank.* Ms. Alegria stated, under penalty of

perjury and based on her personal knowledge, that (1) she worked for Chase, (2) she had

access to loan documents in the course of her employment, (3) she had possession of the

original Rutherford Note and Deed of Trust in her capacity as a Chase employee with

access to the Rutherford loan file, and (4) the attached loan documents were true and

correct copies of the original Note and Deed of Trust. Similarly, Mr. Edwards stated,

under penalty of perjury and based on his personal knowledge, that (1) he worked for

Chase, (2) he had access to the business records of loans that are serviced by Chase,

(3) he had personally reviewed Chase's records related to the Rutherford loan, including

the original Note, (4) Chase's business records for the loan show that Chase received the

14

original Note on July 18, 2009, and that it has held the Note in its possession since that date, and (5) the attached loan document was a true and correct copy of the original Note.

Mr. Merry's argument that the declarations were improperly considered because the declarants failed to provide their qualifications for determining authenticity of original documents fails under the plain language of CR 56(e). CR 56(e) does not require the declarants to provide such qualifications. Instead it requires the declarants to make their statements based on personal knowledge, which they each affirmatively stated they did. Additionally, Mr. Merry's argument that the declarants failed to show they have personal knowledge of the creation and signing of the documents also fails. As stated above, declarants need not be the person who created the record. *Ben-Neth*, 34 Wn. App. at 603. It is sufficient that the declarants have custody of the records in the course of their employment, as Ms. Alegria and Mr. Edwards also affirmatively stated they had. *Id.*

Finally, Mr. Merry cannot "'rely on speculation, argumentative assertions that unresolved factual issues remain.'" *Discover Bank*, 154 Wn. App. at 727 (quoting *Seven Gables Corp. v. MGM/UA Entm't Co.*, 106 Wn.2d 1, 13, 721 P.2d 1 (1986)). "After the moving party submits adequate affidavits, the nonmoving party must set forth specific facts rebutting the moving party's contentions and disclose that a genuine issue of material fact exists." *Id.* Because Mr. Merry only attacks Ms. Alegria's and Mr.

15

Edwards's qualifications as declarants and does not provide any of his own evidence to dispute their statements, the trial court properly considered the declarations.

## 2. No Necessity of Establishing Chain of Title

Mr. Merry contends that Chase is not a "holder" of the Note because how Chase came to be in possession of the Note is not revealed in the chain of title. For one, the P&A Agreement does not specifically assign the Note. Additionally, Chase's later assignment of the Deed of Trust did not assign the Note. Thus, he argues, all public documents in the record pertaining to the chain of title show that Chase, at best, is a mere service provider, holding the Note in the capacity of caretaker, not as an HIDC. In response, Chase contends that there are clear public records showing how and when Chase took possession of the Note.

The undisputed facts provide that on September 25, 2008, Chase acquired Washington Mutual's loan assets and mortgage servicing rights from the FDIC. The P&A Agreement sets forth the terms of this sale. Chase asked the trial court to take judicial notice of the P&A Agreement.

The basis of Mr. Merry's chain of title argument is that the 39-page P&A Agreement that Chase produced for the record is not the document through which Chase obtained the interest in Washington Mutual's assets. He argues Chase has failed to

16

produce for the record the actual governing document, which is a 118-page purchase and assumption agreement. He cites a California case that found the 118-page agreement controlling under similar facts and argues that collateral estoppel prevents Chase from denying the existence and controlling elements of the undisclosed document. *See Jolley v. Chase Home Fin., LLC*, 213 Cal. App. 4th 872, 153 Cal. Rptr. 3d 546 (2013). Thus, based on the limited records produced by Chase, he contends the only proper conclusion is that the Note was lost or assigned by Washington Mutual to another party prior to the FDIC take over. If not lost or previously assigned, it would be identified in the real property purchase and assumption agreement containing 118 pages.

Mr. Merry's contentions amount to an argument against Chase's request that the trial court take judicial notice of the 39-page P&A Agreement rather than a collateral estoppel argument. *See id.* at 887. The *Jolley* court noted that "the request was for judicial notice of the fact that on September 25, 2008, 'Chase acquired certain of the assets of [Washington Mutual], including all loans and loan commitments of [Washington Mutual]'" rather than for judicial notice of the legal conclusion that Chase did not assume liabilities based on borrower claims. *Id.* Because the trial court had used the P&A Agreement for the latter purpose rather than the former, it found error. *Id.*

17

Here, Chase asked the court to take judicial notice for the former reason rather than the latter. There is no indication the trial court improperly relied on the P&A Agreement for the legal conclusion that Chase acquired the Note and Deed of Trust under the P&A Agreement, nor does Mr. Merry argue that it did. Instead, he argues that the unproduced 118-page document controls rather than the 39-page document that was produced. This court need not address this argument. The effect of the P&A Agreement is immaterial to determining whether Chase is the lawful beneficiary of the Note because Washington law only requires that Chase currently hold the Note. *Bain*, 175 Wn.2d at 102-04. As discussed above, the declarations of Chase employees established that Chase currently holds the Note, and Mr. Merry failed to provide any evidence to the contrary.

### 3. Chase is an HDIC

Mr. Merry also argues that Chase is not a lawful beneficiary of the Note because it is not an "HDIC." He contends that Chase knew or should have known that the Rutherfords had defaulted on their Note at the time Chase purchased the loan, and thus it could not be an HDIC. This contention is based on Chase's February 2013 assignment of the Deed of Trust. Mr. Merry argues that because Chase was assigned the Deed of Trust in February 2013 and the May 2013 Notice of Default stated that the Rutherfords had

18

No. 32603-9-III
*Merry v. Qual. Loan Serv. Corp.*

defaulted on their November 2012 payment, Chase took possession of the Note knowing it was overdue.

Mr. Merry's argument fails for two reasons. First, the DTA "contemplates that the security instrument [i.e., deed of trust] will follow the note, not the other way around." *Bain*, 175 Wn.2d at 104. On its face, the Deed of Trust assignment does not assign the Note. Additionally, Mr. Edwards's declaration states that Chase took possession of the Note in 2009. As stated above, Mr. Merry does not produce any evidence to refute the statements in Mr. Edwards's declaration. Thus, the unrefuted evidence suggests Chase took possession of the Note before the Rutherfords defaulted.

Second, the DTA does not require Chase to be an HIDC. Mr. Merry only cites one case for his HIDC argument that is applicable to the DTA context. However, the citation is to dicta in *Bain* that "while many defenses would *not* run against a holder in due course, they could against a holder who was not in due course." 175 Wn.2d at 119 (emphasis in original). The court's statement references two provisions of Washington's UCC—RCW 62A.3-302 and RCW 62A.3-305. But even if these two provisions of the UCC are applicable in the DTA context, they are not applicable here, where the record does not establish that Chase took possession of the Note knowing that it was overdue.

19

Mr. Merry also contends that Chase is not an HIDC because it assigned itself the Deed of Trust in its capacity as attorney-in-fact of the FDIC. This argument again fails because Chase became the beneficiary of the Note in 2009, several years before the assignment. Chase's status as holder and, therefore, beneficiary depends on its possession of the Note, not the Deed of Trust. *See* RCW 61.24.005(2); RCW 61.24.030(7)(a).

4. Chase Does Not Need to Produce the Original Note

Finally, Mr. Merry argues that Chase has not proven it currently holds the Note because it has not produced the original Note for inspection. This contention is known as the "show-me-the-note" argument. *Bavand v. OneWest Bank, FSB*, 176 Wn. App. 475, 499, 309 P.3d 636 (2013).

Mr. Merry cites no authority to support this contention that Chase must produce the original Note and Deed of Trust to prove that it is the holder. In *Bain*, the Washington Supreme Court stated, "If the original lender had sold the loan, that purchaser would need to establish ownership of that loan, either by demonstrating that it actually held the promissory note or by documenting the chain of transactions." 175 Wn.2d at 111. Neither of these methods requires the beneficiary to file the original note.

In *Bavand*, the court found the representations related to the "show-me-the-note" argument to be unsupported by the record before it, but it did not express an opinion as to the validity of the argument itself. 176 Wn. App. at 499. In that case, the defendants attempted to raise the "show-me-the-note" argument to affirmatively show that OneWest was the note holder and thus the beneficiary. *Id.* at 498. The defendants cited a certified copy of the note that was attached to a legal memorandum, rather than a declaration or affidavit explaining more. *Id.* The court stated that "[p]ossession of a 'true and correct *copy* of the original' does not, of course, establish possession of the original note itself." *Id.* (emphasis in original). Thus, "[w]ithout possession of the note, on which OneWest relies in this case, it is not the holder of that instrument either under the [UCC] or the [DTA]." *Id.* at 498-99.

*Bavand* does not advance Mr. Merry's position. Although copies of the Note and Deed of Trust were attached to both declarations of the two Chase employees, Chase is not arguing that such attachments establish it is the holder. Rather, both sworn declarations attest to the fact that Chase is in possession of the original Note. This is sufficient for Chase to establish it is the holder of the Note.

No. 32603-9-III
*Merry v. Qual. Loan Serv. Corp.*

CONCLUSION

No genuine issue of material fact exists as to whether Chase has actual possession

of the original Note and therefore is a lawful beneficiary. We affirm the trial court's

summary judgment dismissal as to Quality on the basis of lack of justiciability. We

affirm the trial court's summary judgment dismissal of Chase on the merits.

Affirm.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

_____
Lawrence-Berrey, J.

I CONCUR:

_____
Korsmo, J.

22

No. 32603-9-III

Brown, A.C.J. (concurring) — I agree Mr. Merry's claim as a junior lienholder is not justiciable and that we should affirm. I write separately because I reason his lack of standing under Washington's deed of trust act (DTA), chapter 61.24 RCW, is an additional basis for affirming the trial court.

First, RCW 61.24.090(1) allows borrowers, grantors or any third party like a subordinate lienholder to cure any default related to foreclosure; Mr. Merry took no action to cure. Second, Mr. Merry as a subordinate lien holder may have restrained the pending sale of the Rutherford property under RCW 61.24.130(1); he took no action to seek an injunction. Third, under RCW 61.24.127(1) borrowers or grantors have a cause of action against a deed-of-trust trustee if in material violation of the DTA, but Mr. Merry is neither a borrower nor a grantor. I would not extend the protections of RCW 61.24.127(1) to Mr. Merry under our case facts merely because he is a junior lienholder without first requiring him to either cure the default or restrain the foreclosure sale.

Brown, A.C.J.
_____
Brown, A.C.J.